**THE CENTRAL TRUST CO., Plaintiff-Appellee, v HART, et, Defendants-Appellants, and HART, et, Defendants-Appellees.**

Ohio Appeals, First District, Hamilton County.

Nos. 6878, 6879. Decided April 19, 1948.

Nichols, Wood, Marx & Ginter, Cincinnati, for plaintiff-appellee, The Central Trust Company.

Robert S. Marx, Carl M. Jacobs, Cincinnati, and Frost & Jacobs, Frank E. Wood, Jr., and John B. Tytus, Cincinnati, for defendants-appellants, Howard M. Hart and Dorothy A. Evans.

Graydon, Head & Ritchey, John W. Warrington, and Murphy & Brownscombe, Cincinnati, for defendants-appellees, Ella D. Hart and Richard James Shepard, a. k. a. Richard James Hart.

## OPINION

By MATTHEWS, PJ.:

These actions were instituted in the Probate Court of Hamilton County by the plaintiff trustee, seeking a construction of certain provisions in the wills of James L. Hart, deceased, and Mary T. Hart, deceased, and for instruction and direction as to its duty as trustee.

The defendants were Howard M. Hart and Dorothy A. (Hart) Evans, who are children of James L. Hart, and Richard James (Shepherd) Hart, who claims to be an adopted son of James Malcolm Hart, a deceased son of James L. Hart, who was the life beneficiary of the trust estate created by these two wills, which form the subject-matter of these actions.

After a decree construing the provisions of the wills favorably to Richard James (Shepherd) Hart, the adopted child of James Malcolm Hart, and directing the plaintiff to administer the trusts in his favor, the defendants Howard M. Hart and Dorothy A. (Hart) Evans appealed on law and fact to this Court. As the parties were the same and the issues similar, the cases were heard together in the Probate Court and that procedure was followed in this Court.

James L. Hart and Mary T. Hart were brother and sister. Mary T. Hart executed her will on May 31st, 1918, and it was admitted to probate on May 1st, 1924. By her will, she first disposed of her jewelry and pictures to various persons, some related by blood and some not. She then made several specific bequests to relatives and charities, and devised her Cincinnati residence and her interest in a summer residence in Massachusetts and their contents, not previously disposed of, to her brother, Edward A. Hart. By Item Six, she directed that all the rest of her estate should be divided by her Executors into three equal parts. One part, she gave to her brother, Edward A. Hart. One part, she gave to the trustees thereinafter appointed, to hold in trust for the benefit of the children of her deceased sister for their respective lives, and upon their deaths to their respective "lawful issue him or her surviving absolutely and in fee simple, such issue to take by representation."

Errata: The first line on this page should read "HISTORY:— Will *construction* case in Probate Court," instead of "Will contest in Probate Court."

As to the third share it was directed that her brother, James L. Hart, should be paid $25,000.00, and subject to this specific bequest, it was provided that "from and out of the principal or corpus of said remaining equal share, I give, devise and bequeath to my executors hereinafter named, in fee simple, securities and property of the value of twenty five thousand ($25,000.00) dollars, to be held by them in trust, nevertheless, for the following uses and purposes, to-wit: To hold, control, manage, sell, invest and reinvest the moneys, securities or property, real or personal, constituting the corpus of said fund; to collect the rents, issues and profits therefrom arising, and, after paying all necessary and proper costs, taxes, expenses, and other charges thereon, to divide, pay over and distribute, quarterly, the net income therefrom arising to my nephew James Malcolm Hart, son of my brother James Hart, for and during the term of his natural life; and upon the death of my said nephew, to pay over, distribute and convey, the principal or corpus of said trust fund of $25,000 to his lawful issue him surviving, absolutely and in fee simple, such issue to take by way of representation. Provided, however, that if any issue of my nephew shall, at the time above provided for distribution of the principal or corpus of said fund of $25,000. not have attained the age of twenty five years, that then and in such event their share of said principal or corpus shall continue to be held in trust as above, and the net income therefrom arising shall be paid over to them until such time as they shall attain such age, at which time distribution of the principal thereof shall be made to them. In case my said nephew James Malcolm Hart should die **without leaving issue him surviving**, then the net income arising from said fund of $25,000. and the principal or corpus of said fund which would otherwise pass to his issue, shall pass to and vest in his brother and sister, or their issue, as the case may be; such issue to take by way of representation. And in case any issue of my said nephew James Malcolm Hart should die without reaching twenty five years of age, then the share which said issue would have taken in the principal or income of said fund, of $25,000., shall pass to and vest in their surviving issue respectively; and in default of such surviving issue, shall pass to and vest in the other issue of my said nephew, all issue to take by way of representation." And then, subject to these two specific bequests, all the rest of said third share was given in trust for the equal benefit of Howard M. Hart and Dorothy A. Hart, children of James L. Hart, her brother.

James L. Hart executed his will on February 27th, 1920, and it was admitted to probate on December 24th, 1924. He gave his residence and one-third of all the rest of his property

to his wife, and then provided as to all the rest of his property that "Two-ninths (2/9) to my son Howard M. Hart, to be his absolutely; Two-ninths (2/9) to my daughter Dorothy A. Hart, to be hers absolutely; and Two-ninths (2/9) to the Central Trust Company of Cincinnati, trustee appointed in Item Six of this, my last will and testament, to be held by said trustee in trust; and I direct that the income of said two-ninths of my personal property so held by said trustee shall, beginning immediately after my death, be paid in monthly installments to my son James Malcolm Hart, and that said payments of said income held by said trustee be paid to him monthly for and during his natural life. If my son James Malcolm Hart should die **leaving a child or children** living at the time of the death of my son James Malcolm Hart, I direct that said Trustee pay the income of said two-ninths of my personal property in monthly installments to said child or children, share and share alike, until said child or children respectively reach the age of twenty-one (21) years, at which time or times the share of said child or children in the principal of said two-ninths of my personal property is to be paid to said child or children by said trustee outright. If my son James Malcolm Hart should die leaving no child or children living at the time of the death of my son James Malcolm Hart, then I give said two-ninths of my personal property to my son Howard M. Hart and my daughter, Dorothy A. Hart, share and share alike, to be theirs absolutely. It is my intention that the interest of my daughter Dorothy A. Hart and my son Howard M. Hart in this two-ninths part of my personal property **is to become fixed and vested as of the date of my death.**"

The plaintiff trustee came into court asking for a declaration as to the meaning of the language used by the testatrix and the testator in order that it might safely proceed in the administration of the trusts created by them. The plaintiff had no interest other than to be protected in the discharge of its duty. Consequently, the appeals are not by it, but are by Howard M. Hart and Dorothy A. Evans, claiming an interest in the trust funds under these wills and the appellee is Richard James Shepherd, also known as Richard James Hart, also claiming under said wills. Neither can succeed other than by bringing themselves or himself within the descriptive terms of one or the other or both of the wills. In other words, he or she can take only if it appears that that was the intent as expressed in the will.

The actions are not between rival claimants under the statute of descent and distribution. Those statutes are of incidental value as are all the other surrounding circumstances

in determining the meaning of the testator and testatrix, as disclosed by their testamentary language. Neither statutes nor any other existing circumstances can control or modify a clearly expressed lawful intent, but where a latent or hidden ambiguity is disclosed when an attempt is made to apply the language to the subject-matter, then evidence to place the court in the position of the testator at the time he made his will is competent. Such an ambiguity exists in this case, and we, therefore, admitted evidence of the surrounding circumstances and have considered it in arriving at our conclusion, giving to each item such weight as we considered it to have.

The evidence indicates that James Malcolm Hart was not an ambitious, enterprising, or very able person. The inference seems to be that during his life he lived largely on the income from these two trusts after his father's death. In 1913 he contracted a marriage with a woman whom his father considered undesirable. Immediately thereafter, an arrangement was made whereby his father paid him a monthly sum on condition that he remain away from Cincinnati, which was the home City of the Hart family. From that time on, for a period of more than ten years this arrangement was carried out and the father and son never met. It also appears that James Malcolm Hart contracted debts which he did not pay and that his father was continually annoyed by James Malcolm Hart's creditors trying to persuade him to pay them.

James Malcolm Hart's first wife died childless in 1937. In 1941, James Malcolm Hart married Mrs. Ella Shepherd, who had a son by a prior marriage. In 1944, proceedings were instituted in California, where James Malcolm Hart and his second wife resided, for the adoption by James Malcolm Hart of the son of his wife. The validity of that adoption proceeding is disputed, but basing his claim upon that proceeding, Richard James Hart, also known as Richard James Shepherd, now asserts that he is the adopted son of James Malcolm Hart, and, as such, within the testamentary intent of James L. Hart, the father of James Malcolm Hart, and Mary T. Hart, the aunt of James Malcolm Hart.

James Malcolm Hart died late in 1944, and his successor or successors as cestui que trusts became entitled to the trust funds. Richard James Hart, claiming to be the adopted son of James Malcolm Hart under the aforesaid adoption proceedings, claimed to be the beneficial owner, and Howard M. Hart and Dorothy A. Evans claiming, upon failure of surviving child or lawful issue of James Malcolm Hart, to be entitled to the beneficial ownership of the trust funds.

As is shown by the quoted portion of his will, James L. Hart provided that should his son James Malcolm Hart die "leaving no child or children at the time" of his death "then I give—— then I give said two-ninths (2/9)—— to my son Howard M. Hart and my daughter Dorothy A. Hart, share and share alike to be theirs absolutely."

As appears by the quoted portion of the will of Mary T. Hart she provided that should James Malcolm Hart "die without leaving issue him surviving, then the net income arising from said fund which would otherwise pass to his issue shall pass to and vest in his brother and sister."

It is conceded that James Malcolm Hart left surviving him no natural child or issue, and that also in a legal sense, he died without child or issue him surviving, unless Richard James Hart is an adopted child and as such answers to the description of child or issue, and entitled to all the rights incident to the relation of parent and child.

Without doubt, §8030 GC, showed the legislative intent to make an adopted child an heir of the adopting parent, who, in event of intestacy, would inherit from the adopting parent, but it did not show any legislative intent to limit the power of the adopting parent to deprive the adopted child of any and all interest in the estate by disposing of it otherwise by will. We are not of the opinion that the legislature by §8030 GC, intended to make an adopted child an heir of the entire blood stream coursing through the veins of the adopting parent and of all its tributaries. **Albright v Albright, 116 Oh St, 668, at 678,** and **Flynn v Bredbeck, et al., 147 Oh St, 49, at 55.** But we are not confronted here with the problem of determining the legislative intent of the General Assembly. Our problem is to determine the testamentary intent of James L. Hart and Mary T. Hart.

If, by virtue of his adoption, Richard James Hart became entitled to every right that a natural child of Malcolm Hart, born in lawful wedlock, might assert, that, per se, would give him no vested right to share in the estates of James L. Hart and Mary T: Hart. James Malcolm Hart had no vested interest in either of those estates by reason of his blood relationship. Either could have disinherited him entirely. He took under their wills because they intended he should, and only to the extent that they intended. An adopted child of James Malcolm Hart had no vested right to inherit or otherwise participate in these estates. Such a child could take under these wills only in the event that the intent be found that it should take.

Now who were to take these trust funds upon the death of James Malcolm Hart?

Turning to the wills, we find that in the one will it is said that his surviving "child or children" should take, and in the other will that his "lawful issue him surviving" should take, and in the event of no surviving child in the one case and no surviving issue in the other, then the appellants, Howard M. Hart and Dorothy A. Evans should be entitled.

The question is whether in either case the intent is shown that an adopted child, created more than 20 years after their deaths, by operation of adoption proceedings was contemplated as coming within the descriptive terms used.

It will be noted that the terms—"child" and "lawful issue" —used are not techincal terms. They do not owe their origin to any legal fiat, nor is their meaning dependent or controlled by any statutory definition. The testators did not resort to technical nomenclature to express their intent. If they had resorted to terms of art, as for instance, "heirs" it might be that we would be required to determine whether the legislature had defined the term as including an adopted child of a son or nephew of a testator. That the testator's choice of words is important in this respect is pointed out in 3 Restatement of the Law of Property, at 1668, where it is said:

"Limitations in favor of 'heirs,' 'heirs of the body,' 'next of kin,' 'relatives,' and other groups described by words of similar import, constitute the subject matter of this Chapter. Such limitations give rise to problems substantially different from those involved in Chapter 22 (class gifts in favor of 'children,' 'grandchildren,' 'brothers,' 'sisters,' ' nephews,' 'nieces,' 'cousins,' 'issue,' 'descendants' or 'family'). This difference in problems is due primarily to the fact that the terms found in the limitations to 'heirs,' or 'next of kin,' have primary meanings fixed by some statute on the intestate succession of property, while the terms found in the limitations dealt with in Chapter 22, as for example, limitations to 'children,' are terms understandable without the aid of any such statute."

We, therefore, are governed in this case by the rule applicable when the class is described by the non-technical terms of "child" or "lawful issue."

In 3 Restatement of the Law of Property, at 1520, et seq., the rule is stated in Section 287 that:

"(1) When a limitation is in favor of the 'children' of a designated person, all persons adopted by the designated person are excluded from the possible takers thereunder except when a contrary intent of the conveyor is found from additional language or circumstances.

"(2) The following are- the most frequently encountered factors tending to establish the existence of the 'contrary intent of the conveyor,' referred to in Subsection (1):

"(a) the conveyor is also the designated person;

"(b) the conveyor at the time of the execution of the instrument containing the limitation knows of the adoption."

Applying this rule to the facts of this case would require us to hold that James L. Hart did not intend to include the adopted child of his son within the class that was to take upon the death of the son. The facts bring the case within the general rule of exclusion stated in the rule and not within either of the exceptions. The testator was not the adoptive parent of Richard James Hart and as the adoption proceeding did not occur for more than 20 years after his death, he could not have known about it when he executed his will. While the language (lawful issue) used by Mary T. Hart does not bring her will within the exact words of the rule in the Restatement, it does bring it within the spirit of the rule. "Issue" is not a technical term. It is not of legal origin. It has a wide adaptability. If it has acquired any technical legal meaning it is "heirs of the body" which would exclude an adopted child from inheriting even from the adoptive parent by the express term of §8030 GC. See, 22 Words and Phrases, 715. Certainly, "lawful issue" is not synonymous with "heirs" and has no fixed statutory meaning.

Appellee's counsel rely strongly upon **Smith v Hunter, 86 Oh St, 106.** In that case, the remainder was devised to "the heirs at law." The court analyzed the will to discover the intent and concluded that the phrase "heirs at law" had a technical meaning, that a living person could not have heirs, that until the life tenant died she could have no heirs, and that in order to determine who her heirs were the statutes in force at that time had to be consulted, that they controlled, and that all persons coming within the statutory definition would be entitled, and that, therefore, an adopted child would take, because the testator had in effect incorporated the statutes of descent and distribution into his will. We have no such pointing to the statutes by either of the testators in these wills for a determination of the class to take upon the death of the life tenant. In the two wills here presented for construction, no legislative act subsequent to their execution could affect the class without doing violence to the testamentary intent, whereas, in Smith v Hunter the testator left the composition of the class the complete control of the legislature during the entire life of the first taker.

We think the case falls within the category embraced by Section 287 of the Restatement of the Law of Property, and illustrated by **Albright v Albright, 116 Oh St, 668,** the syllabus of which we quote:

"A testator devised certain land to his son Isaac Albright in a will which contained the following provision: 'The land above devised to my son Isaac Albright he is to have the use of during his natural life, and at his death to vest in fee simple in his children if he shall have any living. If he shall leave no children living at his death then said lands shall vest in his legal representatives of the Albright family.' Isaac Albright died without children, having adopted a child, Jesse Albright, fifteen years after the death of the testator. In an action for partition and quieting of title, **held** that the adopted child is not a 'legal representative of the Albright family,' and does not take under the will."

In the first sentence of the opinion the court emphasized that the problem before the court was the ascertainment of the testator's intention and that pole star was kept constantly in view throughout the opinion. The adoption statutes were discussed, not because there was any thought that such statutes or any other statutes controlled the devolution of this property, but solely for the purpose of ascertaining the testator's intent, which did control. And in distinguishing Smith v Hunter, the court, at 676, et seq., said:

"However, in the case of Smith v Hunter, the will construed employs the words 'heirs at law' instead of the words 'child' and 'children.' Also the Albright will expressly qualifies the devise over to Isaac's 'legal representatives' with the phrase 'of the Albright family.' Now the term 'heir at law' is essentially a legal term, and applies to those persons who have certain legal rights under the statutes of descent and distribution. It signifies, in its strict and technical import, the person or persons appointed by law to succeed to the estate in case of intestacy. 2 Blackstone's Commentaries, 201. As the will in Smith v Hunter specified that the remainder interest in the property in question should pass to the 'heirs at law' of the life tenant, and as the statute appointed adopted children to succeed to the estate of their adopting parents in case of intestacy, this court was undeniably correct in holding that under the record the term 'heir at law' included adopted children.

"The term 'child' or 'children,' on the other hand, has both a legal meaning and an age-old lay meaning. It may

be conceded that either of these terms would, if used in certain contexts, include adopted children under either Sections 3139 and 3140, Revised Statutes, or §8030 GC. However, as given by Webster, one of the first definitions of the meaning of the term is:

" 'A son or a daughter; a male or female descendant in the first degree; the immediate progeny of human parents; in law, legitimate offspring.'

"The question before us herein is whether in his will Charles Albright used the word 'child' in the legal sense, meaning to include both natural children and persons who had the status of natural children under the statute, or in the ordinary sense in which it is generally employed in common speech, as meaning only issue of the body."

And at 680, the Court adopted as its own this rule of construction from 28 Ruling Case Law, 252:

" 'There are numerous decisions to the effect that a testator who by will makes provision for his own 'child or children' by that designation should be held to have included an adopted child, since he is under obligation in morals if not in law to make provision for such child. If, however, a will makes provision for a 'child or children' of some other person than the testator, the adopted child of such person is not included, unless other language of the will makes it clear that it was so intended. In the absence of circumstances tending to show that the testator anticipated the adoption, or knew that it had already taken place, and therefore probably intended to treat the person adopted as a possible beneficiary, the decisions generally exclude the adopted child from the benefit of the will. A limitation in a will, to a child or children, or conditioned upon the survivorship of a child or children, is not deemed to include an adopted child, where the grantor or testator is a stranger to the adoption.' "

The court discussed many terms of the will in search of the testator's intent, and particularly that provision that if the life tenant should die without child or children surviving then the property should go to the "legal representatives of the Albright family." There is no doubt of the cogency of the reasoning based on that clause of the Albright will. But the Court also called attention to other provisions indicating that the testator used the word "children" in the sense of "heirs" which would make this rule in Smith v Hunter applicable. The court did not treat any indicia as conclusive of the intent.

There is no language in either of the wills under construction in these cases indicating that either testator used the words "children" and "heirs" as synonymous terms. Each testator seems to have intended to avoid the use of technical terms in designating the beneficiaries of his or her bounty— and to have succeeded. We can find no indication of an intention by either to adopt statutory definitions or to delegate to the legislature the power to define terms used by them by future legislation.

And we do find that James L. Hart by the provision that the interest of brother and sister should become "fixed and vested as of the date of my death" manifested a special concern for them in relation to succession to this property. Certainly, it shows that he did not want their interest to be dependent upon any contingency beyond that actually expressed by him. It shows that he had no intention to leave it to the legislature to define terms and thereby enlarge the contingency. It also shows a purpose to exclude the hazard of having them deprived of their interest by a. voluntary conveyance by James Malcolm Hart, or as it seems to us, by the combined action of a legislature and James Malcolm Hart, such as a statutory adoption proceeding.

In the case of **Everhard v Brown, 75 Oh Ap, 451,** the court was required to determine whether adopted children of designated persons, other than the testator, came within his testamentary intent. After discussing Albright v Albright, supra, the court said at 466, et seq.:

"There is a general rule pronounced in the foregoing quotation which, by analogy, applies with even greater force to the facts of the instant case than to the case in which it was asserted.

"The fact that these adoptions occurred many years subsequent to the death of the testator is a circumstance of great importance. The testator was a complete stranger to the adoptions. We believe it inconceivable that the testator intended to include persons in his bounty who might years after his death become adopted children of a nephew. Certainly the presumption is to the contrary, and to include such children would enlarge the words used beyond their ordinary meaning and import. Ordinarily, the words 'grandnephew' and 'grandniece' do not contemplate a person adopted by the son of a testator's brother or sister. 28 Ruling Case Law, Wills., Section 223; Re Estate of Putterbaugh, Deceased, 261 Pa., 235, 104 A., 601, 5 A. L. R., 1277.

"For a comprehensive discussion of the general subject,

282

see 'Construction of Private Instruments Where Adopted Children Are Concerned,' 43 Michigan Law Review, 705.

"We therefore conclude that the adopted children claiming under this will are not entitled to participate in the distribution."

We find it unnecessary to pass upon the validity of the adoption proceedings. Assuming their validity, we find that an adopted child of Malcolm Hart does not come within the testamentary intent of either James L. Hart of Mary T. Hart.

Our conclusion is that James Malcolm Hart died without child or children or lawful issue surviving him, and that, therefore, Howard M. Hart and Dorothy A. Evans take the funds in each instance under the provisions of these wills.

Decrees may be presented in accordance with this opinion.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.