The Estate of Sunderland.

.  AFFIRMED.

## THE ESTATE OF SUNDERLAND.

1. **Descent:** CHILD ADOPTED IN FOREIGN STATE: HEIRSHIP IN THIS STATE. Where a child was adopted in a foreign state, under a legislative act which provided that she should inherit *from* the adopting parents "as if she were their legitimate child," *held* that her *status* as an heir was fixed by that act, and that it did not constitute her an heir of her adopting parents to the extent of enabling her to inherit *through* them. Consequently, she was not an "heir" of her adopting father in the sense contemplated by section 2454 of the Code, and did not inherit his share of his father's estate, who survived him and died intestate, leaving property in Iowa. ADAMS AND DAY, JJ., *dissenting*..

*Appeal from Des Moines Circuit Court.*

WEDNESDAY, OCTOBER 18.

THIS proceeding was commenced by the administrator of John Sunderland, for the purpose of having determined who were his heirs and entitled to inherit his estate. Ella Louise Foote Sunderland claimed that she was such heir. The Circuit Court held that she was not, and she appeals.

*Newman & Blake*, for appellant.

*Hall & Huston*, for appellee.

SEEVERS, CH. J.—This cause was submitted to the Circuit Court and to this court upon an agreed statement of facts. The material portion thereof is as follows: In 1860, Wm. P. Sunderland and his wife and their niece, Ella Louise Foote,

were residents of the state of Louisiana, and in that year the General Assembly of that state passed an act authorizing the said Wm. P. and his wife to adopt the said Ella, and providing that her name should be changed, and that she should be known as Ella Louise Foote Sunderland. The following is the act passed by the General Assembly of said state.

"An act to authorize William P. Sunderland, and his wife Maria Louise Sunderland, to adopt their niece, Ella Louise Foote, and to change her name to Ella Louise Foote Sunderland.

"SEC. 1. Be it enacted by the Senate and House of Representatives of the state of Louisiana in General Assembly convened: That William P. Sunderland and Maria Louise Sunderland, his wife, be and they are hereby authorized to adopt Ella Louise Foote, their niece, and that, after said adoption, the said Ella Louise Foote shall be known by the name of Ella Louise Foote Sunderland, and shall inherit from the said William P. and Maria Louise Sunderland, or either of them, as if she were their legitimate child, without prejudice to forced heirs, if any there be.

"SEC. 2. Be it further enacted, etc., that should the said Ella Louise die without issue, either the said William P. or Maria Louise Sunderland surviving, all property which she may have inherited from the deceased shall revert to the surviving spouse.

"SEC. 3. Be it further enacted, etc., that should the said Ella Louise survive the said William P. and Maria Louise Sunderland, and die without issue, then all property which she may have inherited from either or both of said parties shall pass to the heirs of the said William P. and Maria Louise Sunderland, as though this act had never been passed."

William P. Sunderland and his wife adopted the said Ella in strict accordance with the provisions of the foregoing act. All of said parties continued to reside in Louisiana until the

death of William P. and his wife, which preceded the death of John Sunderland, who resided and died in the state of Iowa, where the property to be distributed is situated. William P. is the son of John Sunderland. The appellant claims that under the act of adoption and law of Louisiana, she became the child of, and heir of her adopting father. That the law of her domicile fixed her *status*, and, because of such, she became the child, and entitled to inherit from such parent, not only in Louisiana, but in this state, unless there is some statute or policy of the state of Iowa which prevents her from so inheriting. In support of this proposition *Ross v. Ross*, 129 Mass., 243, is cited. The question in that case was whether a child adopted in Pennsylvania who, with the adopting parents, afterwards became domiciled in Massachusetts, where one of the parents died, could inherit from such parent property situate in the last named state. It was held, under the circumstances, that he could inherit.

The precise question determined in that case is not in the case at bar. It is John Sunderland's estate which is to be distributed, and not that of W. P. Sunderland. As the latter died before, John, the former did not inherit from the latter, and the property of John did not vest in or belong to William P. But the appellant claims, as has been before stated, that she is the child and heir of Wm. P., as fixed by the law of her domicile, and therefore she inherits a share of John Sunderland's estate under a statute of this state which is as follows: "If any one of his (intestate's) children be dead, the heirs of such child shall inherit his share in accordance with the rules herein prescribed, in the same manner as though such child had outlived his parents." Code, § 2454.

There are some doubts whether the word heirs as used in the foregoing statute means one that has been adopted. Passing such question, the appellant, to maintain her claim must not only establish that she can inherit from William P. Sunderland, but also that she can inherit through him, or by the right of representation, such share of John Sunderland's es-

tate as William P. would have inherited had he outlived the former. This question can only and must be determined by a construction of the statute of Louisiana, and for the purposes of the case it will be conceded that the *status* of the appellant is to be fixed and determined by the law of her domicile.

The statute aforesaid provides the appellant "shall be known by the name of Ella Louise Foot Sunderland and shall inherit from said William P. or Maria Louise Sunderland, or either of them, as if she were their legitimate child." A strained construction should not be placed on the foregoing statute. The appellant inherits *from* William P. Sunderland as though she were his legitimate child. That is, she inherits from him as a legitimate child would, or in the same manner or to the same extent. But she is not his child or heir except as fixed by the Louisiana statute. That statute does not say that the appellant is the heir or entitled to inherit from John Sunderland, or that she shall or can inherit, a part of his estate through William P. Whatever property the latter owned at his death the appellant can inherit but it does not follow that she can inherit property that never belonged to her adopting parent. If the intention had been that the appellant should inherit through William P. Sunderland, we think the statute would have so provided. It is a special statute, evidently passed at the instance of William P. Its terms and conditions were, without doubt, dictated by him and we are forced to the conclusion that the only purpose and intent was as expressed therein and as above indicated. That such was the intent is apparent from the second and third sections. Special provisions are there made as to who shall inherit in case the appellant survived her adopting parents and died without issue. In such case the heirs of such parents were to inherit, and not the heirs of the appellant. It is evident the statute of this state cannot enlarge or extend the scope and effect of the statute authorizing the adoption of the appellant.

The facts in *Keegan v. Geraghty*, 14 Chicago Legal News, 84 (s. o., 101 Ill., 26), were that Michael R. Keegan and his wife adopted Mary Ann Keegan as their daughter, under a statute of Wisconsin, which provided that an adopted child "shall be deemed, for the purpose of inheritance and succession　＊　＊　＊　the same to all intents and purposes as if such child had been born in lawful wedlock　＊　＊　＊　saving only that such child shall not be deemed capable of taking property expressly limited to the heirs of the body or bodies of such petitioner or petitioners."

Michael R. Keegan and his wife removed to Illinois where the latter died, and the said Michael married again and left surviving him a natural child to whom he devised his property. The question was whether Mary Ann Keegan could inherit from such child. It was held by the Supreme Court of Illinois that she could not. The decision was based upon a construction of a statute of that state which provided: "A child so adopted shall be deemed, for the purposes of inheritance by such child,　＊　＊　＊.　as if he had been born in lawful wedlock." It was held that Mary Ann Keegan could not inherit from the deceased child of Michael R. Keegan, because she was not the sister of the said child. And yet she was such, if for the purpose of inheritance she should be regarded as having been born in lawful wedlock. But as she was not a sister in fact, it was held that she could not inherit under the statute. The logical result of the decision is, that the adopted child under the Illinois statute can only inherit from the adopting parent.

The appellant is not the child in fact of John Sunderland, nor his heir, because the act of adoption does not make her such, or provide that she shall inherit through William P. Sunderland, or by the right of representation.

AFFIRMED.

ADAMS, J. *dissenting.*—The question presented in this case is as to the distribution of that part of John Sunderland's

estate which would have been inherited by his son, Wm. P. Sunderland, if he had outlived the intestate. There ought, I think, to be no difficulty in answering the question, because the statute provides who shall take his share in plain and explicit terms, and this is wholly a matter of statute. We have no occasion to inquire who would take, but for the statute. There is no natural right which the statute cannot control. The wishes of the ancestor must control, and the statute is supposed to express his wishes, in the absence of any testamentary disposition.

Where, then, a person dies intestate, we have only to inquire what was the statute under which he died. If we find its terms to be plain and unambiguous, we must take it as it reads. We cannot be allowed to engraft upon it an exception by judicial construction. Yet that is what the majority does, as it seems to me, and the only reason for it, that I can discover, is that the statute innovates upon the common law rule of descent, and cannot be supposed to express the wishes of the intestate, notwithstanding it must be assumed that he elected to die intestate.

Let us see whether I am correct in my position, that the majority engrafts by judicial construction an exception upon a plain and unambiguous statute. Section 2454 of the Code is in these words: "If any one of his (the intestate's) children be dead, the heirs of such child shall inherit his share in accordance with the rules hereinafter prescribed, in the same manner as though such child had outlived his parents." We have a case where one of the intestates's children was dead at the time the intestate died. Wm. P. Sunderland was one of the intestate's children, and he was dead. Now the statute expressly says that "the heirs of such child shall inherit his share." To determine, then, who shall inherit his share, we have only to inquire who were his heirs. If Ella Louise Foote Sunderland was his heir, she must inherit. That she was not such there can be no pretense. She was adopted with that express view. The act of adoption expressly pro-

vides "that Wm. P. Sunderland and Maria Louise Sunderland, his wife, be, and they are hereby, authorized to adopt Ella Louise Foote, their niece, and that after said adoption the said Ella Louise Foote shall be known by the name of Ella Louise Foote Sunderland, *and shall inherit from the said Wm. P.* and Maria Louise Sunderland, or either of them, as if she were their legitimate child." Without any question, then, Ella Louise Foote Sunderland became the heir of Wm. P. Sunderland. We come next to inquire whether she was such heir as is contemplated by the word "heirs" as used in section 2454 of the Code, above cited. The word *heir* is a legal term, and means any one who can inherit. This is all the significance that the word has. It seems abundantly evident to me that by the word "heirs," as used in the section cited, is meant those who can inherit. It does not, I think, mean heirs by blood alone, nor heirs by adoption alone, but all who can inherit. We have already held that our statute of descent must be construed literally, regardless of blood relationship. *Moore v. Weaver*, 53 Iowa, 11. To my mind it is clear that those who would have inherited from Wm. P. Sunderland, if he survived his father, shall now inherit his share. We can easily conceive that Wm. P. Sunderland and his wife may have adopted their niece largely with the view of prospective inheritance from the intestate. There is certainly no reason for supposing that the construction which I would give the statute would work an unforeseen and undesired diversion of the property. It is true, the act of adoption modifies what would otherwise be the rule of inheritance from Ella Louise. But the special provision as to inheritance from her does not modify, nor have any tendency to modify, the express provision as to inheritance by her. She is not the less the heir of Wm. P. as provided, and is not the less embraced within the word "heirs" as used in the section of the Code above cited. Nor does the fact that she was adopted in Louisiana make her less the heir. Her adoption there established her relation to her adopting father completely, and that relation must

be recognized elsewhere. *Ross v. Ross,* 129 Mass., 243. She without question would have inherited from Wm. P. Sunderland in Iowa. That is all we need to know, because the statute expressly makes Wm. P's heir, John's heir, Wm. P. being dead. It distributes what would have been Wm. P.'s share to those who would have inherited from Wm. P. if he had survived his father and died intestate seized of it. No language could more clearly give expression to this idea.

But it is thought by the majority that the construction which should be given to our statute of descent should be governed somewhat by the construction which has been given by the Supreme Court of Illinois to the Illinois statute of descent. The majority cite and rely upon *Keegan v. Gerahty,* 14 Chicago Legal News, 84 (s. c., 101 Ill., 26). But in my opinion, that case bears no analogy to this. The question in that case was as to the descent of the estate of one Mary Gertrude Keegan. The plaintiff, Mary Ann Keegan, claimed to inherit it as the heir of Mary Gertrude. Her alleged heirship was predicated upon the theory that she was the sister of Mary Gertrude. Had she been the sister, she would under the statute of Illinois have been the heir. The question presented was as to whether she was the sister. The court held that she was not. The fact was that she was the adopted daughter of Michael R. Keegan, and the intestate Mary Gertrude Keegan was the actual daughter of Michael R. Keegan. The court very properly held that Mary Ann Keegan and Mary Gertrude were not sisters. The relation of sister, unlike that of heir, is a mere natural relation, and cannot be constituted by statutes, as the relation of heir can be. The court in that case, referring to the statute, said: "To inherit under that statute she (the plaintiff) must be a sister of Mary Gertrude Keegan. Petitioner is not such sister, nor has she been made an adopted sister, and had given her the right of an adopted sister to Mary Gertrude Keegan. An adopted child is not a child in fact, nor is an adopted child, having the rights of a child, a child in fact. But, under the statute of

descent, to inherit from Mary Gertrude Keegan as her sister, the petitioner must have been the actual child of Michael R. Keegan."

The court further held in that case that the petitioner, who had been adopted under the laws of Wisconsin, could not have greater rights than if adopted under the laws of Illinois, and by the law of Illinois it is expressly provided that an adopted child shall not be capable of taking "property from the lineal or collateral kindred òf the parent by right of representation." How inapplicable that case is to the case at bar may be seen from this, that if Ella Louise Foote Sunderland is the heir of Wm. P. Sunderland within the meaning of the Iowa statute, then by that same statute she is expressly made capable of taking property from the lineal kindred by right of representation. I cannot agree with the majority, and I think that the judgment of the court below should be reversed.

I am authorized to say that Mr. Justice DAY concurs with me in this dissent.