CATHERINE MESECHER, appellee, v. MARTIN D. LEIR, administrator c. t. a. of estate of ALBERT MAUSNEST, et al., appellants.

No. 47632.

(Reported in 43 N.W.2d 149)

. JUNE 13, 1950.

Jebens, Butenschoen & Werner, of Davenport, for appellants.

Clay LeGrand, of Davenport, for appellee.

HALE, J.—The question involved is whether, under a bequest to the children of an aunt of the testator, an adopted daughter of such aunt will inherit equally with the two natural children. The case was tried largely on a stipulation of facts, in substance, as follows: The will of Albert Mausnest, of Davenport, was duly admitted to probate on April 3, 1944; that by said will he devised and bequeathed one-third share of the residue of his property as follows—"a one-third share thereof unto such of the children of my aunt, Mrs. Kate Yeager of Rock Island, Illinois, as may be living at the date of my death."

The defendants Mary Allen and Josephine Schaum are natural daughters of Kate Yeager, and the plaintiff, Catherine Mesecher, is the adopted daughter of Kate Yeager. Kate Yeager died prior to the death of said Albert Mausnest, a resident of Rock Island County, Illinois; she, Kate Yeager, by proceedings in the court of Rock Island County adopted Catherine Mary Stafford, her granddaughter, on April 5, 1906. The decree provided that she should retain the name of Catherine Mary Stafford, her name being now Catherine Mesecher.

It was further stipulated that, subject to objections, Catherine Mesecher, plaintiff, would testify as follows: That she was born December 26, 1901; that Kate Yeager was her maternal grandmother and the aunt of Albert Mausnest, with whom she was well-acquainted, and visited in the home of his parents once or twice a year until she was a young girl of the age of twelve or fourteen; that the Mausnest home was in Davenport and that she does not recall the date on which the father and mother of Mausnest died; that her visits continued until about the time Albert Mausnest married, at which time her visits ceased except for one visit which she made to the home of Albert Mausnest thereafter; that on several occasions during these visits the adoption of Catherine Mesecher by Kate Yeager was discussed by those present; that at the time of such discussions those present were Kate Yeager, Catherine Mesecher, Albert Mausnest, Charlie Mausnest, and, on one occasion, Anna Mausnest and Pauline Mausnest; that such discussions caused her considerable anguish and concern and impressed upon her that she was an adopted child; that on one occasion Albert Mausnest stated that Kate Yeager, in view of her advanced age, had done a very noble thing in adopting Catherine Mesecher.

This is the substance of the stipulation in plaintiff's testimony.

The defendants' testimony, except as to the offer of exhibits, consisted of the examination of Martin D. Leir, an attorney, who drew and was a witness to the will. His testimony, introduced under objection, was, in substance, that, "Mr. Mausnest called at my office. He had previously prepared some penciled notes as to what he wanted set out in his will. He was rather reticent in his conversation with me and at times seemed to resent any suggestions I would make. He stated he wanted me to prepare his will and gave me the names of certain relatives that he wanted named in there. There was nothing mentioned about an adopted child, and he did not say who the children of his aunt, Kate Yeager, were, and did not seem to have a very clear notion himself as to who they were. He mentioned about leaving one third of his residuary estate to the children of his aunt, Kate Yeager."

The adoption statute of the state of Illinois was introduced in evidence. The foregoing, with the will, constitutes the evidence in the case.

The pertinent part of the will in controversy is the "Seventh" clause, as follows:

"Subject to the life estate set out at No. 4 hereof, I give, devise and bequeath all the rest, residue and remainder of my property of every kind, nature and description, and wherever located unto the following:

"A one-third share thereof unto such of the grandchildren of my late uncle, Jacob Hoersch, Davenport, Iowa, as may be living at the date of my death.

"A one-third share thereof unto such of the children of my aunt, Mrs. Kate Yeager of Rock Island, Illinois, as may be living at the date of my death.

"A one-sixth share thereof unto such members of the Pfitzenmeier family of Aledo, Illinois, as may be living at the date of my death, said devisees being my second cousins and being the following four persons: Charles Pfitzenmeier, William Pfitzenmeier, Edward Pfitzenmeier and their one sister whose name is unknown to me.

"A one-sixth share thereof unto the grandchildren of my late uncle, Jacob Einhallig, at one time of Leavenworth, Kansas."

In this clause the only part in controversy is that part making a bequest to the children of Mrs. Kate Yeager. The cause was submitted to the court, which found that Mrs. Yeager was survived only by two natural daughters and one adopted daughter, and that it was the intention of Albert Mausnest to include Catherine Mesecher as a beneficiary under said clause seven, and decree was entered accordingly, that is, that the two natural children and plaintiff should share equally in the devise and bequest established by clause seven. Defendants appeal.

Defendants allege that the court erred in determining the testator's intention in its interpretation of the meaning of the words "children of my aunt." Also erred in determining the testator's intention in not considering the effect of the adoption statute of the state of Illinois pertaining to a collateral inher-

itance, and erred in its interpretation of the testator's will and surrounding circumstances pertaining to its execution.

█ I. The question before the court is the interpretation of that part of the seventh clause of the will respecting the devise and bequest to the living "children of my aunt, Mrs. Kate Yeager", the plaintiff alleging that she is entitled to share. It is argued by the plaintiff that the general proposition in which this dispute arises may be stated as follows: Ordinarily, the word "children" when used in a will and when referring to children of a person other than the testator does not include adopted children. In order for such term to include adopted children of a person other than the testator, it is necessary that the intention of the testator to include such children appear. Various forms of words which have been passed upon by the courts appear in the reports, and various questions arise, thus—whether the adoption was completed before or after the testator's will, and whether testator had knowledge of the adoption at the time his will was executed.

The rule is expressed in Restatement of the Law, Property, section 287, page 1520:

"(1) When a limitation is in favor of the 'children' of a designated person, all persons adopted by the designated person are excluded from the possible takers thereunder except when a contrary intent of the conveyor is found from additional language or circumstances.

"(2) The following are the most frequently encountered factors tending to establish the existence of the 'contrary intent of the conveyor,' referred to in Subsection (1):

"(a) the conveyor is also the designated person;

"(b) the conveyor at the time of the execution of the instrument containing the limitation knows of the adoption."

The comment on subsection (2), clause (b), on page 1524, is:

"Situations which include the factor described in Clause (b). When a conveyor limits property in favor of his own 'children' and has theretofore adopted a child, the situation thus created is within both Clause (a) and Clause (b). When, however, a conveyor limits property in favor of the 'children' of

a person other than himself and such person has theretofore adopted a child, the situation is not within Clause (a) but is within Clause (b), if the conveyor knows of the adoption at the time of the execution of his conveyance. When these facts exist, a finding is justified that the conveyor intended such adopted child to share to the same extent as if he had been a natural born child of the designated person, and this finding is made unless additional language or circumstances tend to establish a contrary intent."

The reason for the rule showing a contrary intent is that where a will has been executed before the effective date of an adoption, it has been held that the word "children" does not include an adopted child because such children not then being in legal existence could not have been in contemplation of the maker of the will, but in other cases in which the adoption is completed before the execution of the testator's will and the testator had knowledge of that adoption, it has been held that the testator intended to include adopted children in the term "children." This appears to be the reason for the distinction and in general the principal reason for the difference in the holdings of the courts. However, in a Maine case, In re Woodcock, 103 Maine 214, 216, 217, 68 A. 821, 822, 125 Am. St. Rep. 291, while these conditions were met, yet the court held contrary to the general rule.

The Maine case held, as shown by the headnotes, that "where a testator devises property to his own child by blood and then over to the 'child or children' of that child, if any, otherwise to others of the testator's blood, a child of the latter by legal adoption only is not included and takes nothing under the will, even though adopted before the making of the will." The question was whether the words "child or children" as used by the testator in the clause of the will included a child by adoption and not of blood. It was therein held, not according to the rule, division (a) above-quoted, that "where one makes provision for his own 'child or children,' by that designation, he should be held to have included an adopted child, since he is under obligation in morals if not in law to make provision for such child." Citing cases.

But the case further holds that "when in a will provision

is made for 'a child or children' of some other person than the testator, an adopted child is not included unless other language in the will makes it clear that he was intended to be included, which is not the case here."

As we have suggested, we think the current of opinion, as shown by the cases, is the other way, and that In re Woodcock represents the minority rule.

In the present case the will of Mausnest was executed in Davenport, Iowa, on July 20, 1943. The adoption of Catherine Mesecher took place in the county court of Rock Island, Illinois, April 5, 1906, thirty-seven years before the execution of the will, and there was evidence this was of the knowledge of the testator for practically all of this period and that it had met with his approbation. See Central Trust Co. v. Hart, 82 Ohio App. 450, 80 N.E.2d 920; Mooney v. Tolles, 111 Conn. 1, 149 A. 515, 70 A. L. R. 608; Munie v. Gruenewald, 289 Ill. 468, 124 N.E. 605, citing Bray v. Miles, 23 Ind. App. 432, 54 N.E. 446, 55 N.E. 510, and In re Truman, 27 R. I. 209, 61 A. 598. Also see Beck v. Dickinson, 99 Ind. App. 463, 192 N.E. 899; In re Will of Horn, 256 N. Y. 294, 176 N.E. 399; In re Estate of McEwan, 128 N. J. Eq. 140, 147, 15 A.2d 340, and authorities cited. The McEwan case discusses thoroughly the question we have before us announcing the general rule heretofore set out. See divisions [4, 5] of the opinion, found on page 344 of 15 A.2d. See also Smyth v. McKissick, 222 N. C. 644, 24 S.E.2d 621; Smallwood v. Smallwood, 121 N. J. Eq. 126, 186 A. 775. All of these cases referred to included these factors: The adoption was completed prior to the execution of the will; the adoption was known to the testator at the time his will was executed; and the wills were held to include adopted children equally with natural children.

Other cases, unnecessary to cite, hold that the use of the term "child or children" in a will includes an adopted child or children even though the adoption was not completed until after the testator's will, and in most instances until after his death.

On the other hand, the Woodcock case has not escaped criticism. See In re Trust of Holden, 207 Minn. 211, 291 N.W. 104, and Beck v. Dickinson, supra, which disapprove of the reasoning in the Woodcock case.

II.   Many questions are argued and many cases are cited by counsel, but we are satisfied that the decision of the case narrows down to a discussion of the meaning of the word "children," as applied to the intention of the testator. We have stated the general rule and its interpretation, with some citation of authorities, but have not attempted to analyze all the cited decisions. We may call attention, however, to some of the cases.

Cook v. Underwood, 209 Iowa 641, 228 N.W. 629, is discussed by both plaintiff and defendants. It touches on the question in Division I. In the Cook case the adoption is five years after the execution of the will and fourteen months after testator's death. The decision in the case holds, as a matter of intention the testator did not mean to include an adopted child of his daughter, such child not then being in legal existence and not coming into legal existence until after testator's death; that the testator did not contemplate including a nonexistent child within his bounty. Cases cited by defendants are mostly, if not all, where adoption was subsequent to the will, and in some cases subsequent to the death of the testator, with one or two exceptions where the opinion does not show whether the adoption was before or after the execution of the will.

Reference is made to the case of In re Estate of Wright, 241 Iowa 349, 357, 41 N.W.2d 80, 85, where it was held that since Joseph E. Wright took nothing his widow and his adopted child and her children take nothing. The statement was made that "the words 'children' and 'issue' * * * refer only to blood descendants of the testatrix, and do not include adopted children." (Citing Cook v. Underwood, supra.) The reason stated was that "the intention of the testatrix was clearly to keep the property in her bloodline."

There is nothing in the Wright case that is contrary to the rule here mentioned. We have referred to the general rule as to the word "children", but we are holding that the facts of the case in issue bring it within the exceptions heretofore noted. The case was determined by the question of whether or not the devise and bequest in the will constituted a vested or contingent remainder, and the intention of the testatrix, from an analysis of the will, indicates that the property was to descend to the

blood relatives, as the plainly evident intent of the maker of the will.

We are satisfied that a principal requirement for the adopted child to be considered under the term "children" is that the adoption was completed before the execution of the will, and second, the testator knew of the adoption. Conditions may vary with the different cases and circumstances may add to or take away from this requirement, but it is sufficient when it appears in the facts, and will authorize the court to consider under the term "children" an adopted child as distributee.

III. The defendants assign as error that the trial court erred in not considering the effect of the adoption statute of the state of Illinois pertaining to collateral inheritance. In the first place the rights of the plaintiff in this case grow out of the will and the interpretation thereof, and not by virtue of the inheritance laws of Iowa or of Illinois, but as a legatee under the will. We fail to see what difference it makes whether her right to succession is governed by the laws of Illinois or those of Iowa. Her right to the property granted by the will would be equally effective under the laws of either state, but the inheritance is in Iowa, and, under the general rules as we see it, the laws of succession would govern and such we believe is the practical effect of any of the laws of either state. We may, however, briefly notice the argument of defendants that the authorities hold that the courts consider the adoption statute to ascertain whether the adopted child would inherit. They further argue that the capacity to inherit is governed by the adoption law of the state where the adoption became effective, citing Shaver v. Nash, 181 Ark. 1112, 29 S.W.2d 298, 73 A. L. R. 961, and further citing The Estate of Sunderland, 60 Iowa 732, 13 N.W. 655.

We think the defendants are in error in their argument. Even though a court should consider the laws of inheritance of the state of adoption, we do not think that such consideration would be of value. See 1 C. J., Adoption of Children, section 138, holding that foreign adoption statutes have no extraterritorial effect. But it is generally held that the status created by an adoption in one state will be recognized by the courts of another state, to such extent at least as is not inconsistent with

the laws and policy of the latter. See also 2 C. J. S., Adoption of Children, section 66, holding that the capacity of the person to inherit will be determined by the laws of the state in which the succession takes place. See 1 Am. Jur., Adoption of Children, sections 66 and 67, holding that the status of adoption is a personal one, and when such status is created under the laws of one state it is a general rule that it will be recognized in others. Also, the rule stated in American Law Institute's Restatement of the Law, Conflict of Laws, section 143: "The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law."

In the present case the adoption took place in Illinois, but the succession took place in Iowa. But, as we have stated, the right of plaintiff to the property devised or bequeathed does not accrue by the adoption laws of the state, but arises from the will itself and not by the laws of inheritance.

IV. Other questions are argued which it is unnecessary to discuss. They do not affect our holding in the case and are not necessary to a decision. We are satisfied that under the rules laid down heretofore pertaining to the intention of the testator that the present case comes within the exception to the general rule which is, that from the will or the surrounding circumstances it is made manifest that the intention of the testator was that the word "children" included adopted children, and they are to be considered as taking under the will.

It seems unreasonable to believe that the testator in this case when he used the term "children" did so with the deliberate intention of excluding the plaintiff. We think the contrary the more reasonable belief. He had known of the adoption, associated with the plaintiff and her grandmother (her adoptive parent) through a period of thirty-seven years. We believe authorities support that conclusion, and that such conclusion is more logical and more reasonable, and that the intention of the testator was that the child he had known as a member of the family of his aunt was, with other members of the family, entitled to and was intended to share in the division of his bounty.

The present case seems to justify the application of what we have termed the exception to the general rule, although in fact there is authority in some of the cases for holding it to be the general rule. It is apparent that the reason which existed for the inclusion of any of these children under testator's will was because they were the members of his aunt's family, as he knew such family, and he desired to make distribution among them for that reason. We think that under all the circumstances shown by the evidence we should hold that the intention of the testator was to include all three children, natural and adopted. So holding, the cause is affirmed.—Affirmed.

All JUSTICES concur.