Judith **ELLIOTT**, Appellant,

v.

Marvin **HIDDLESON**, Don Hiddleson, Marilyn Pentico, Keith Hiddleson, Lois Consier, Janice Swanson and Darrell Doidge, Appellees.

No. 64584.

Supreme Court of Iowa.

March 18, 1981.

Rehearing Denied April 10, 1981.

Michael F. Mumma of Reading, Pauley, Horak & Mumma, Jefferson, for appellant.

Richard Poffenberger of Joy, Poffenberger & Joy, Perry, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and McGIVERIN, JJ.

McCORMICK, Justice.

The question in this partition action concerns the right of an adopted child to take under the will of a stranger to the adoption. Applying the "stranger to the adoption" rule, the trial court held that plaintiff Judith Elliott was not a lineal heir of her adopting mother within the terms of her adoptive grandfather's will. Because we reject the rule and the conclusion, we reverse and remand.

Plaintiff sought partition of 160 acres of Dallas County farmland in which she alleged an undivided one-eighth interest. Defendants are the seven natural grandchildren of S. B. Doidge. In resisting partition, defendants alleged they alone inherited the land under the will of their grandfather. They asked for a declaratory judgment adjudicating and quieting their title to that land and two other quarter sections inherited from S. B. Doidge.

The relevant evidence is not in dispute. The problem involves construction of a will and codicil of S. B. Doidge. He executed a will on June 21, 1946, devising the three quarter sections of farmland. He left each parcel to a named child for life and then to the surviving spouse of such child for life. He next provided that each parcel "shall upon the termination of the life estate in each instance descend to and become the absolute property of my then living grandchildren or their lineal heirs-at-law."

Testator executed a codicil on September 16, 1947. Additional land was devised. A life estate was given to Bessie Hiddleson, a daughter, with remainder to testator's "grandchildren or to their lineal heirs-at-law, and in the case of the death of anyone, to his or her lineal heirs-at-law." Separately the codicil referred to the devise of the three parcels involved in the present case:

Upon the termination of the life estate in the three farms referred to in Items I, II and III in my original Will, as soon as the life estate on any or all of said farms terminate[s], then the title thereto shall pass in equal shares to my then living grandchildren or their lineal heirs-at-law, and *by grandchildren, I mean lineal heirs of my own children.*

(emphasis added). The scrivener of the will and codicil was attorney L. H. Doran of Boone.

Approximately one month after execution of the codicil, testator died. The will and codicil were admitted to probate. The estate was duly probated and was closed by order approving final report on September 20, 1948. Testator was survived by his three children, Herman Doidge, Bessie Hiddleson, and Edna Hefley. Herman and Bessie had children. Subsequent to testator's death, Bessie had an additional child. Edna had no children at testator's death but her husband had a son from a prior marriage. On March 12, 1948, Edna and her husband adopted plaintiff, who was then three years old. The adoption was noted in the final report and order, but no determination concerning the effect of the adoption was made in the probate proceedings. The

additional land devised in the codicil was subsequently sold in a partition action and is not involved in the present case.

Edna Hefley and her husband are now dead. The present partition action involves the quarter section in which they had life estates. The life estates in the other parcels are still extant. However, defendants requested a declaratory judgment in this case quieting their interests in all three parcels.

After hearing the evidence, the trial court held plaintiff received no interest in the three farms devised in the will. Consequently the court dismissed plaintiff's petition. This appeal followed.

■ The problem here involves construction of testator's will and codicil. Testator's intent is the polestar. It must be ascertained, if possible, from the language in the will and codicil, the scheme of distribution, and facts and circumstances surrounding the making of the instruments. Technical rules of construction are resorted to only if the testator's intent remains uncertain after that inquiry. *See Elkader Production Credit Association v. Eulberg,* 251 N.W.2d 234, 237 (Iowa 1977).

■ The parties agree that the testator devised the remainder interest in his farms as a class gift. A class gift " 'is a gift to two or more persons who are not named and have one or more characteristics in common by which they are indicated or who answer to a general description.' " *In re Estate of Kalouse,* 282 N.W.2d 98, 101 (Iowa 1979). At the termination of the life estate on each of testator's farms, the farm was to pass in equal shares to a class defined by the testator as "my then living grandchildren or their lineal heirs at law." To be a member of this class, it was necessary to survive the life tenant. *Smith v. Harris,* 227 Iowa 127, 135, 287 N.W. 255, 259 (1939).

The fighting issue here is whether the class includes adopted grandchildren. The will and codicil do not expressly resolve this issue. However, testator said in the codicil that "by grandchildren, I mean lineal heirs

of my own children." Thus the problem concerns whether he considered adopted children to be "lineal heirs" of his children.

■ Testator did not say what he meant by the term "lineal heirs." The scheme of distribution, however, does not disclose an intent to limit beneficiaries to the testator's bloodline. The interest of a predeceased grandchild would be taken by the grandchild's lineal heirs-at-law. Unless a contrary intent is found from additional language or circumstances, the legal heirs of a designated person are those who would take by intestate succession at the person's death. *Lincoln Joint Stock Land Bank v. Mitchell,* 239 Iowa 995, 1000, 33 N.W.2d 388, 391 (1948). A child adopted by the designated person would take as a lineal heir-at-law of that person under past and present statutes. *See* §§ 600.6, 636.31, The Code 1946; §§ 633.219, .223, The Code 1979. The adopted child would also inherit from an intestate stranger to the adoption. *McCune v. Oldham,* 213 Iowa 1221, 240 N.W. 678 (1932).

Because the instruments refer to the heirs-at-law of grandchildren rather than heirs-at-law of the testator's children, this designation does not necessarily evince an intent to include adopted grandchildren in the devisee class. Neither, however, does the context establish that the testator used the term "lineal heirs" in defining grandchildren to mean blood descendents. Nor is that the technical meaning of the term. Under statutes like ours, an adopted child is a lineal heir of the child's adoptive grandparents. *See Commerce Trust Co. v. Weed,* 318 S.W.2d 289, 297 (Mo.1958). *See also Major v. Kammer,* 258 S.W.2d 506 (Ky. Ct.App.1953); *New England Trust Co. v. Sanger,* 118 A.2d 760 (Me.1955); *In re Nicol's Trust,* 19 N.Y.2d 207, 225 N.E.2d 530, 278 N.Y.S.2d 830 (1967).

In arguing for a contrary conclusion, defendants rely on prior decisions of this court in which it was found adopted children did not take as "heirs." *See Schaefer v. Merchants National Bank,* 160 N.W.2d 318 (Iowa 1968); *Cook v. Underwood,* 209 Iowa 641, 228 N.W. 629 (1930); *Warden v. Over-*

*man,* 155 Iowa 1, 135 N.W. 649 (1912). Those cases are not controlling here for two reasons. First, they are distinguishable on their facts. Second, they rely in part upon the "stranger to the adoption" rule which we today reject.

In *Warden* the testator's sole heir-at-law was an adopted daughter. The daughter remained in the control of her natural parents, and the adoption was not publicly recognized. The testator made a bequest to the daughter in her will by name and called her "my young friend." She separately provided her residuary estate would go to her lawful heirs, excepting two nephews. The court found the circumstances and context showed the testator did not use the term "lawful heirs" in its technical sense. Because she had only one heir-at-law, testator could have left her property to her adopted daughter by using the singular term "heir" without excepting the two nephews. Consequently, the court concluded she used the term "lawful heirs" to refer to heirs of her blood as a class. 155 Iowa at 8–12, 135 N.W. at 652–53.

In *Cook* the circumstances and context showed the testator used the word "heirs" as the equivalent of "children," "sons," and "daughter." The court held that the statute making an adopted child's status the same in relation to the adopting parents as that of a natural child did not determine the status of the adopted child in relation to an ancestor or other relative of the adopting parent. The court said the word "heirs" did not of its own force demonstrate an intent of the testator that an adopted grandchild would receive a share of his estate. The court then applied the "stranger to the adoption" rule of construction. When a testator other than an adopting parent used "heirs" to mean children, the court held the term would ordinarily not be interpreted to include an adopted child. 209 Iowa at 645–46, 228 N.W. at 631.

In *Schaefer* the trust settlor used the term "direct heir" in the sense of children or grandchildren. The court noted the stranger to the adoption rule: "Where an instrument has been executed before an adoption by a stranger to the adoption, 'children' does not include an adopted child except when the contrary appears from other language or circumstances." 160 N.W.2d at 323. Applying that rule, the court held that an adopted adult was not a "direct heir" within the settlor's intention. The court observed:

> "While there is much merit in the argument that an adopted child should be placed on the same level as natural born offspring, in accordance with public policy favoring adoption, it is not pertinent here as the same public policy does not extend to an adult adoption which appears to be primarily for the purpose of creating an heir." *Id.*

The stranger to the adoption rule was applied in at least two other cases. *See Baker v. Giffrow,* 257 Iowa 929, 135 N.W.2d 629 (1965); *Mesecher v. Leir,* 241 Iowa 818, 43 N.W.2d 149 (1950). In *Mesecher* the court held that an adopted child was included in the term "children" where the adoption was completed before execution of the will and the testator knew of it. 241 Iowa at 826, 43 N.W.2d at 153. In *Baker* the court held that adopted children were not included in the term "children" when the testator did not know of the adoption before or after execution of her will. 257 Iowa at 934, 135 N.W.2d at 632. The court in *Mesecher* and *Baker* followed the statement of the stranger to the adoption rule incorporated in *Restatement of Property,* section 287 (1940).

The present case is factually distinguishable from *Warden, Cook* and *Schaefer.* In each of those cases, circumstances and context showed an intention that the term "heirs" have a meaning other than its technical meaning. The word was found to mean "children." Applying the stranger to the adoption rule, the court found no evidence to overcome the presumption that "children" does not include adopted children. In the present case, the circumstances and context do not show an intent to use the term "heirs" to mean "children." Rather the testator expressed a converse intention, that the term "grandchildren" mean "lineal heirs." Therefore the holdings in

*Warden, Cook* and *Schaefer* are not controlling here.

Nevertheless, we will assume that the testator's intention in defining grandchildren as "lineal heirs" is uncertain, requiring resort to rules of construction. The stranger to the adoption rule applied in *Warden, Cook, Mesecher* and *Baker* would then require a conclusion that plaintiff was not included in the class gift. The instruments were executed prior to the adoption, and under those cases the testator's use of the term "grandchildren" would not alone show an intent to include an adopted child. *See Schaefer*, 160 N.W.2d at 323.

However, we now reject the stranger to the adoption rule.

In accordance with the policy favoring adoption recognized in *Schaefer*, the majority of jurisdictions which have confronted the issue in recent years have rejected the rule. Some decisions have been based on statutes which have been held to dictate that result. *See Connecticut Bank & Trust Co. v. Bovey*, 162 Conn. 201, 292 A.2d 899 (1972); *Warner v. First National Bank*, 242 Ga. 661, 251 S.E.2d 511 (1978); *Ford v. Newman*, 64 Ill.App.3d 528, 21 Ill.Dec. 283, 381 N.E.2d 392 (1978), *aff'd*, 77 Ill.2d 335, 33 Ill.Dec. 150, 396 N.E.2d 539 (1979); *Mercantile-Safe Deposit & Trust Co. v. Purifoy*, 280 Md. 46, 371 A.2d 650 (1977); *Simpson v. Simpson*, 29 N.C.App. 14, 222 S.E.2d 747 (1976); *Vaughn v. Gunter*, 458 S.W.2d 523 (Tex.Civ.App.), *aff'd*, 461 S.W.2d 599 (1970). Other decisions rejecting the rule have been based on the policy expressed in statutes like our own which simply give an adopted child the legal status of a natural child of the adopting parents. *See* § 633.-223 ("A lawfully adopted person and his heirs shall inherit from and through the adoptive parents the same as a natural born child. The adoptive parents and their heirs shall inherit from and through the adopted person the same as though he were a natural born child."); *In re Estate of Heard*, 49 Cal.2d 514, 319 P.2d 637 (1957); *Chichester v. Wilmington Trust Co.*, 377 A.2d 11 (Del. 1977); *Jackson v. Riggs National Bank*, 314 A.2d 178 (Del.1973); *In re Trusts of Har-*

*rington*, 311 Minn. 403, 250 N.W.2d 163 (1977); *In re Patrick*, 259 Minn. 193, 106 N.W.2d 888 (1960); *In re Coe*, 42 N.J. 485, 201 A.2d 571 (1964); *In re Estate of DeRoy*, 481 Pa. 403, 392 A.2d 1355 (1978); *In re Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972); *Wheeling Dollar Savings & Trust Co. v. Hanes*, 237 S.E.2d 499 (W.Va.1977); *In re Trusts of Adler*, 30 Wis.2d 250, 140 N.W.2d 219 (1966). Because we are dealing with a rule of construction, we are free to change it by judicial decision.

In a similar situation, the Supreme Court of New Jersey reasoned:

> At any rate, it is not important whether the adoption statute directly controls the interpretation of instruments. The important point is that the statute reflects the feeling and attitude of the average man and hence its policy should be followed unless the benefactor explicitly reveals a contrary purpose....
>
> ....
>
> We cannot believe it probable that strangers to the adoption would differentiate between the natural child and the adopted child of another. Rather we believe it more likely that they accept the relationships established by the parent whether the bond be natural or by adoption and seek to advance those relationships precisely as that parent would. None of us discriminates among children of a relative or friend upon a biological basis.... We ought not to impute to others instincts contrary to our own.

*Coe*, 42 N.J. at 489–92, 201 A.2d at 574–75. We join the states which have rejected the stranger to the adoption rule. Consequently we overrule prior cases which have relied on it.

In rejecting the rule, we do not preclude the right of a testator to distinguish between natural and adopted children as objects of his bounty. We merely require that such intent be shown. Unless a contrary intent appears, we will presume that a testator intended to treat adopted children in the same manner as natural children. In so doing, however, we will not permit the conscious use of adoption as a

means of upsetting a transferor's normal expectations. *See Chichester*, 377 A.2d at 14–15; *Coe*, 42 N.J. at 492–93, 201 A.2d at 575–76; *In re Estate of Griswold*, 140 N.J. Super. 35, 47, 354 A.2d 717, 719 (1976); Halbach, *The Rights of Adopted Children Under Class Gifts*, 50 Iowa L.Rev. 917, 990–93 (1965).

Applying the new rule in the present case, we find nothing to show an intent to exclude adopted children from the term "grandchildren" employed in the testamentary instruments. Instead, the presumption of inclusion is buttressed by the circumstances and context. Plaintiff was adopted while a small child. She became a "lineal heir" of testator's daughter Edna. Moreover, at the time the instruments were executed, Edna's husband had a son from a prior marriage. Edna did not adopt that child. By defining grandchildren as his children's lineal heirs, testator may well have intended only to exclude that child unless he were adopted by Edna.

The trial court erred in holding that plaintiff was not a lineal heir of her adopting mother under testator's will. The partition action should not have been dismissed on that ground. We reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.