Mary Ann SKOOG, Appellant,

v.

Lester FREDELL, Gladys Fredell, Maxine Davis, and John Davis, Appellees.

No. 68682.

Supreme Court of Iowa.

April 20, 1983.

Jack W. Peters and John M. French of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for appellant.

John K. Petersen, Red Oak, for appellees.

Considered by UHLENHOPP, P.J., HARRIS, McGIVERIN, and CARTER, JJ., and LeGRAND, Senior Judge.

HARRIS, Justice.

In *Elliott v. Hiddleson,* 303 N.W.2d 140, 144–45 (Iowa 1981), we abandoned the "stranger to the adoption rule," and recognized a presumption that strangers to an adoption do not differentiate between natural and adopted children unless they manifest a contrary intent. The question here is whether such a contrary intent was manifested by a grantor who deeded property to his granddaughter for life, with remainder to "the heirs of her body." The trial court held a contrary intent was manifested so that the adopted daughter of his granddaughter did not take a remainder interest. We affirm the trial court.

The dispute is over a farm in Montgomery County. Plaintiff (Mary Ann) is the niece of two of the defendants (Maxine and Lester. Two other defendants are the spouses of Maxine and Lester.). John Fredell and his wife Marie Fredell deeded the farm in question on October 16, 1935. Their only child was Gust Fredell. Gust had three children: Gladys Rydquist, Maxine Davis, and Lester Fredell. Plaintiff is the adopted daughter of Gladys. The deed reserved a life estate in the grantors and then conveyed the farm in question to Gladys "for the term of the natural life of our said granddaughter, with remainder over to the heirs of the body of the said Gladys Rydquist, who are living at the time of the death of the said Gladys Rydquist."

On the same date the deed was signed John executed his will which the trial court aptly described as follows:

Under his will, his estate was left to his wife and son for their lives with the remainder to his grandchildren. Grandchildren is defined in the will as the children of the body of the son. A deceased grandchild's issue of the body would take the share of the deceased parent. If the deceased grandchild had no issue of the body living at the time of the death of the son, then the remainder would be divided by the children of the body of the son living at the time of the son's death.

John died 12 days later on October 28, 1935. Marie, his wife, died in 1942. Gust Fredell died in 1945 leaving three natural children: Gladys, Maxine, and Lester.

Plaintiff's adoption by Gladys occurred in 1944 when plaintiff was one year old. Gladys died in 1980. Plaintiff was the sole beneficiary under her will. The parties apparently once believed that at Glady's death the farm in question reverted equally to the grantors' heirs at law: plaintiff (for her mother), Lester and Maxine. On November 24, 1980, plaintiff, Maxine, and Lester, entered into a contract by which plaintiff would purchase the one-third shares of her aunt and uncle.

After we rejected the "stranger to the adoption rule" in *Elliott v. Hiddleson,* 303 N.W.2d at 144–45, plaintiff filed this petition for a declaratory judgment that, under *Elliott,* she is the sole owner of the property as the heir of Gladys. She also seeks repayment of the money she paid under the contract. She believes, and we agree, that the *Elliott* holding applies alike to those who execute wills or deeds.

In interpreting a deed the intent of the grantor is the polestar. *Schenck v. Schenck,* 242 Iowa 1289, 1291, 50 N.W.2d 33, 34–35 (1951); 23 Am Jur 2d, *Deeds,* § 159, at 205–08 (1965); 26 C.J.S. *Deeds* § 82 at 807–09 (1956).

The words employed in the deed, and in the will, are a vestige of those used in

medieval England to create a fee tail, a device long used to bind and hold intact the title to realty. The words were used to connote a blood relationship between the grantor and the holder of the estate. *See* 28 Am Jur 2d, *Estates,* § 45, at 130–31 (1966); 31 C.J.S. *Estates* § 22 at 47 (1964). Fee tails were never allowed in Iowa. Here, as in other American jurisdictions, we resolved questions of title to real estate when language which was historically used to create a fee tail found its way into the words of limitation in a deed or will. *See Pierson v. Lane,* 60 Iowa 60, 61–63, 14 N.W. 90, 91–92 (1882).

The parties do not argue that a fee tail was created or attempted here. We are presented with a legal question. What is the effect of the expression "heirs of the body" as it relates to a claim of an adopted child? The expression was used in a case which we distinguished because it did not involve an intervening life estate. We said: "In the *present context,* heirs of the body are simply heirs in a restricted sense—heirs who are descendants." (Emphasis added.) *In re Estate of Oppelt,* 203 N.W.2d 213, 214 (Iowa 1972).

We think the grantor here understood "heirs of the body" to mean bodily heirs or natural born children. In *Buchan v. Buchan,* 254 Iowa 566, 571, 118 N.W.2d 611, 614–15 (1962), we said:

> The term "heirs of the body" ordinarily means such of the issue or offspring of a person as may by law inherit, to the remotest posterity. The words mean lineal descendants. *Pringle v. Houghton,* 249 Iowa 731, 744, 88 N.W.2d 789. They are words of limitation in that they refer to heirs by consanguinity and not by affinity. They limit the heirship to those related by blood.

> In the case at bar when testator limited the devolution of title to his real estate to "heirs of my body" he limited heirship to heirs of his own blood. To that extent plaintiff, a son, and defendant, Burton F. Buchan, a grandson, would qualify.

The *Restatement of Property,* § 306 comment g (1940) states:

> g. *Adopted child as a claimant.* An adopted child of the designated ancestor is not an heir of his body. Thus, unless a contrary intent of the conveyor is found from additional language or circumstances, an adopted child is not included in a limitation to the "heirs of the body" of a designated person. The court is justified in finding an intention on the part of the conveyor to include an adopted child in a limitation to the "heirs of the body" of a designated person if such person has only adopted children, which fact is known to the conveyor, and the age of the designated ancestor is such that it is unlikely he will have children born to him.

*See Restatement of Property,* § 306 comment i (discussing contrary intent).

Other states which have interpreted the question have found the expression "heirs of the body" to exclude adopted children. *See, e.g., First National Bank v. Sullivan,* 394 S.W.2d 273 (Mo.1965); *Stover v. Seitz,* 527 S.W.2d 829, 832 (Tex.Civ.App.1975).

■ We do not retreat from our holding in *Elliott.* That holding, however, left open the possibility that some persons might wish to expressly distinguish between natural and adopted children. We think the grantor here, in deeding the farm to the heirs of the body of his granddaughter, manifested such a wish.

The trial court did not err in determining that an adopted child, notwithstanding our holding in *Elliott,* is not an heir of the body of the adopting parent.

AFFIRMED.