### RODGERS et v MILLER, Tee et

Ohio Appeals, 2nd Dist, Franklin Co

Decided Feb 9, 1932

James H. Hengst, Columbus, for plaintiff.
Karl M. Burr, Columbus, for Andrew D. Rodgers, Jr., Gdn. ad litem and Gdn. of the estate of Stephen Douglas Jeffrey, a minor, and John Richard Jeffrey, a minor.
Francis J. Wright, Columbus, for defendants, Robert H. Jeffrey, Joseph Walter Jeffrey, Florence Jeffrey Carlile, Agnes Jeffrey Shedd, Robert C. Hutchins, Harriet H. Dur-

stine, Margaret H. Bishop, and Katherine H. Heminway.
W. Glover Porter, Columbus, for defendant, Florence Rodgers Jeffrey.

24

HORNBECK, J.

At the time that the settlor executed the deed of trust and for many years thereafter neither of the adopted children of Malcolm Douglas Jeffrey and his wife were in existence. Therefore, as individuals in the status of children of his children they could not have specifically been in the mind of the settlor. He did know, according to the record, that some of his children had natural children and that none had adopted children.

In every instance, save one, in Item V, when the settlor speaks of the immediate representatives of his own children, he characterizes them as "child" or "children" of the deceased child of the settlor. By this language so employed the children of a deceased child of the settlor are placed in a class the representatives of which are entitled to share in the income and corpus of the estate. The exception in Item V, is as follows:

"Should any child of the settlor die without issue and leave either husband or wife, as the case may be, the said husband or wife shall be entitled to one-half of the amount of income which the said deceased child of the settlor would have received and the other one-half of the same shall revert to the trust fund and be apportioned and distributed as a part thereof to the beneficiaries. named herein."

"Issue" is used synonymously with "child" or "children" and may mean issue of the body. If so, the adopted children are not included in the phraseology employed. The word "issue" standing alone and unmodified by circumstances or context imports issue of the body but it is flexible and may mean adopted children or heirs at law.

Much time and research have been employed by counsel in analyzing and discussing the effect of the adoption statutes, §3090, R. S. in effect at the time the deed of trust was executed and §§8029 and 8030, GC, in effect when the minors were adopted and when it is claimed the rights arose under the deed of trust.

As we view this case, the difficulty is not presented in the construction of the adoption statutes but in determining the mean-

ing of the language "child" or "children" and "issue" as employed by the settlor.

If the settlor by the force alone of the language employed or in connection with the context of the trust deed, or, if upon these considerations it is ambiguous, then from extrinsic circumstances, meant to include the adopted children of Malcolm Douglas Jeffrey nothing in the statutes would stand in the way of their enjoyment of the rights accorded by the deed. But, as we understand the rule, there is a difference in the construction required in the use of "child" or "children" when employed by the adopting parent and when used by a stranger to the adoption. Had Malcolm Douglas Jeffrey used the language "child" or "children", referring to his children, the presumption would attend that he meant to include both natural and adopted children whether or not they had been adopted at the time of the execution of the instrument. To the contrary, when a stranger to the adoption employs the language "child" or "children" relating to children other than his own, the presumption attends that he does not mean to include other than natural children.

We are constrained to say that there is nothing in the deed of trust which would tend to overcome the presumption that he did not mean to include the adopted children of Malcolm Douglas Jeffrey in the language employed. The use of the word "issue" strengthens the theory that he had in mind only natural children of his children. Nor does any outstanding purpose appear in this deed of trust to restrict its benefits to the Jeffrey family. If we had to depend upon proof of this intent from the instrument, itself, or form any circumstances in evidence it could not be found.

We have considered with care all of the cases in Ohio which have been cited by counsel as germane to our question in the slightest degree. We doubt if the adopted children of Malcolm Douglas Jeffrey in this instance, if they take at all would take through their parent; **Baker v Carpenter, 69 Oh St 15.** If they are entitled to participate in the benefits of this trust, they do so as representatives of a class named and designated by the settlor and take direct from him and not through the adopter father. This is not a question of inheritance as is presented in a number of the Ohio cases.

But it is claimed that circumstances subsequent to the execution of the deed of trust and supplemental deed of trust established that the settlor in designating the class "child" or "children" of my children intended to include the after-adopted children of Malcolm. These facts are set up in stipulation No. 11 of the agreed statement of facts:

"From time to time subsequently to the execution of said instruments and after the adoption of John Richard Jeffrey and Stephen Douglas Jeffrey, respectively, by the settlor's son, Malcolm Douglas Jeffrey and Florence Rodgers Jeffrey, his wife, the settlor referred to them as the said Malcolm Douglas Jeffrey's boys and his, the settlor's grandchildren, and otherwise and acknowledged and approved them as such."

And (No. 12) the last will and testament of Joseph A. Jeffrey, wherein the following item appears:

"To each of my grandchildren living at the time of my decease, I give and bequeath the sum of one thousand ($1000) dollars. These grandchildren are:

Harriet Hutchins Durstine, Margaret Hutchins Bishop and Katherine Hutchins Heminway of New York City, children of my daughter, Minnie Jeffrey Hutchins.

Janet Jeffrey Carlile, daughter of my daughter, Florence Jeffrey Carlile.

Robert K. Jeffrey, of Bexley, Ohio, son of my son, Robert H. Jeffrey.

Marion Shedd, Elizabeth Shedd, Jeffrey Shedd and Agnes Shedd, of Bexley, Ohio, being the children of my daughter, Agnes Jeffrey Shedd.

Mary Loren Jeffrey and Catherine Clark Jeffrey, of Bexley, Ohio, being the children of my son, Joseph Walter Jeffrey.

John Richard Jeffrey, being the adopted son of my son, Malcolm Douglas Jeffrey, of Columbus, Ohio."

In conjunction with these paragraphs should be considered Stipulaion No. 9.

"Neither at the time of the preparation and execution of said instruments, denominated deed of trust and supplement thereto, nor at any time prior thereto were there any adopted children of any of the persons named or referred to in either of said instruments; nor was the possibility of the adoption of children by any of the persons named or referred to in either of said instruments discussed or considered by the said Joseph A. Jeffrey at or prior to the time of the preparation and execution of either of the same."

Objections to the competency, relevancy and materiality of all three of the stipulations were made. The effect of stipulation No. 9 is to preclude any inference that the settlor when the deed of trust was prepared

gave any consideration whatever to the adoption of children by his children. It, therefore, becomes difficult to interpret Paragraphs 11 and 12 as in any manner reflecting upon the intention of the settlor respecting a condition yet to arise to which he gave no thought or consideration whatever. We have accepted all of this testimony for what it is worth but deem it entirely inadequate to import a construction to "child" or "children" of settlor's children as including the adopted children of Malcolm Douglas Jeffrey. Stipulations 11 and 12 are convincing that when a condition had arisen where the attention of Joseph A. Jeffrey was directed to the fact that his son Malcolm had an adopted child he then considered and treated this child as a grandchild and if construction were to be given to an instrument made subsequent to the time covered by these paragraphs the facts therein set forth would be valuable and helpful.

In the will the testator definitely classified John Richard Jeffrey as his grandchild. What he said was tantamount to this, that John Richard Jeffrey, although he is the adopted son of my son Malcolm Douglas Jeffrey is my grandchild. But this statement in the light of Stipulation No. 9 is insufficient to overcome the presumption attending the use of the language in Item 5 of the deed of trust.

We have been favored by unusually helpful briefs of counsel for the parties. We have had the advantage of the opinion of the trial court and believe it is sound and supported by the trend of authority in Ohio and elsewhere.

The case most discussed, and being the latest pronouncement of the Supreme Court of Ohio on the subject is **Albright v Albright, 116 Oh St 668.** Counsel for the guardian insist that a portion of this decision relating to our immediate question is obiter and in this position he is vigorously met by opposing counsel. The item under consideration was:

"The land above devised to my son Isaac Albright he is to have the use of during his natural life, and at his death to vest in fee simple in his children if he shall have any living. If he shall leave no children living at his death then said lands shall vest in his legal representatives of the Albright family."

The testator was the father of Isaac Albright, who died without children but leaving an adopted child, Jesse A., whom he had adopted fifteen years after the death of the testator.

By the syllabus there is an express statement that the adopted child is not a "legal representative of the Albright family," and an implied statement under the language "does not take under the will," that the adopted child did not answer the description of "children of Isaac Albright" as used by the testator.

This clearly appears in the manner in which the writer of the opinion considered the questions presented.

The earlier part of the decision is devoted largely to a determination of what the testator had in mind in the use of the language "and at his death to vest in fee simple in his children, if he shall have any living." It is in this connection that the helpful part of the Albright case is found. It is true that the Court found support for its ultimate conclusion in the further phrase in the item under consideration "legal representative of the Albright family." The court was following the common procedure incident to the construction of a will, namely, attempting to bring to its assistance anything within the four corners of the will which would shed any light upon the intention of the testator. This is exemplified in the opinion, wherein after consideration of the statute of distribution at the bottom of page 678, it is said: "In other words, we have not to construe the statute, but to construe the will and to decide what the testator meant to acocmplish therein." The opinion at the top of page 681 definitely supports the judgment that the adopted child of Isaac Albright was not included by the testator when he devised the remainder to "the children of Isaac Albright if he shall have any living."

We can not escape the value of the Albright case, and its discussion and approval of cited authorities. At the bottom of page 679, Judge Allen, after discussing the family relationship of the testator and after naming those who composed the family of his son, said:

"All of these facts were known to Charles Albright at the time of the execution of his will, and evidently when he repeats the word 'children' throughout these items, he refers to living children of the blood.

There is a presumption that words used in a will are used in their primary and ordinary sense. It is generally held that when a testator uses the word 'child' he means a natural child, unless the context clearly shows that he means to use the term in a sense including adopted as well as natural children. This is particularly the

fact when the testator speaks, not of his own children, but of the children of other persons. 28 Ruling Case Law, page 252, states the rule as follows:

'There are numerous decisions to the effect that a testator who by will makes provision for his own "child or children" by that designation should be held to have included an adopted child, since he is under obligation in morals if not in law to make provision for such child. If, however, a will makes provision for a "child" or "children" of some other person than the testator, the adopted child of such person is not included, unless other language of the will makes it clear that it was so intended. In the absence of circumstances tending to show that the testator anticipated the adoption or knew that it had already taken place, and therefore probably intended to treat the person adopted as a possible beneficiary, the decisions generally exclude the adopted child from the benefit of the will. A limitation in a will, to a child or children, or conditioned upon the survivorship of a child or children, is not deemed to include an adopted child, where the grantor or testator is a stranger to the adoption'."

In Gruelich v Hollencamp, Montgomery County, unreported, this court held, following the Albright case, that an adopted child of a son of the testator could not inherit under §8030, GC.

Cochrel v Robinson, 113 Oh St, 526, is an interesting and instructive case, the opinion of which was written by Judge Day and characteristically considers and discusses many decisions from Ohio and elsewhere. But this case involved only an interpretation of §8598, GC. The question there presented related to the rights of an adopted son who claimed from his adopted mother. The 2nd syllabus illustrates the distinction:

"Such person so designated is to be regarded the same as 'issue' of the person so designating, in so far as it involves his right to inherit from the person so designating under the statutes of descent and distribution."

Smith, et v Hurter et, 86 Oh St, 106, was a general devise to trustees for the benefit of the two children of testator and two sons and two daughters of these children, with a remainder over in "fee simple to the heirs of said daughter." The court there held that under the language "to the heirs at law" of the life tenant an adopted child of the life-tenant would come within the classification. The court had under

consideration neither "children" nor "issue."

**Phillips, Exr v McConica, Gdn., 59 Oh St, page 1,** involved the construction of §5971, Revised Statutes, which provided:

"That when a devise of real or personal estate is made to any child or other relative of the testator, and such child or other relative shall die, leaving issue surviving the testator, such issue shall take the estate."

The court held that the word "issue" as used in this statute meant "child of the body" or "heir of the body" of the deceased relative of the testator and did not include a child adopted by such decedent; that adoption does not make the adopted child of the blood of its adopter nor of the blood of his ancestors.

**Upson v Noble, 35 Oh St, 658,** announces the often stated principle that the adoption statute does not make the adopted child the heir of the ancestors of the adopter and the right of the adopted child to inherit can not extend beyond the statute and that the statute enables the adopted child to inherit from its adopter but not through him.

**Quigley v Mitchell, 41 Oh St 375,** announces a rule of construction in a will case, and holds that as between the adopting parents and the adopted child, §3140, Revised Statutes, bestowed upon the latter all the rights and privileges of a natural child, but did not make the adopted child of the adopter mother of the blood of her father.

**Kroft v Amrein, et, 94 Oh St, 282,** holds that the primary and paramount purpose of the §§8029 and 8030, GC, is to make an adopted child the equal of a natural child "to all legal intents and purposes" and to invest such adopted child with all the rights and privileges of a child of the blood or child begotten in lawful wedlock subject only to the exceptions therein contained. This case, however, involved the right primarily of representatives of an adopted child to take through the adopted child from the adopter parents.

Outside of Ohio the cases are collated and considered exhaustively in Wilder, Trustee v Estella L. Wilder Butler, et, 1918 B. L. R. A. page 119 annotation at page 123; and in Mooney v Tolles, 7 A. L. R. page 608 annotation at page 621. We shall not set them out at length but an examination thereof is convincing that they support with few exceptions the principles which we have followed in this case.

Since writing the foregoing opinion we are in receipt of a letter from counsel for Andrew D. Rodgers, Jr., Guardian ad litem,

etc., and reply thereto from counsel for the defendants Robert H. Jeffrey, et. Our attention is directed particularly to the amendment of §8030, GC, as contained in the new Probate Code effective January 2, 1932, the amended portion thereof being in black face type in the following:

"Provided, such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents; **but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents, or to a class including any of the foregoing * * *."**

It is suggested that this is a codification of the former act, and therefore it must be presumed that it is an interpretation of the meaning thereof. If this is true and the interpretation is correct there can be no doubt that the adopted children are entitled to take under the trust deed.

The amendment according to the editorial note pertaining thereto is new matter. Whether or not it represents an elucidation of that much of §8030 **GC** as was in the judgment of the committee and the legislature embodied within the spirit of the statute, we can not say. We must assume that the committee of the Bar Association acted with knowledge of the cases in Ohio on the subject, and the editorial note indicates that they recognized that the rule theretofore had been that adopted children could inherit from, but not through, the adopting parent.

We are bound by the judgment of the Supreme Court in so far as we can determine it. The Albright case is pertinent as we view it. It quoted with approval from **Phillips, Executor v McConica, 59 Oh St, 1,** particularly paragraph 4 of the syllabus that,

"An adopted child is enabled by §3140, R. S., to inherit from its adoptor but not through him, from his ancestors."

This quotation no doubt supports the reason for the construction of "child or children" as we have interpreted it when used by a stranger to the adoption. The settlor when he executed the deed of trust, if chargeable with any knowledge whatever on the subject, must have known that the adopted children could not take under the language employed in the deed by virtue of Phillips, Exr. v McConica, Guardian, supra. If the question presented were one of first impression, and we did not have the express precedent found in the Albright case, we might reach a different conclusion. The rights of the adopted children to inherit under the terms of the statute were fixed by §8030, **GC,** in effect when they were adopted instead of the section as amended in the new Probate Code.

We therefore, affirm the judgment of the trial court.

ALLREAD, PJ, concurs.
KUNKLE, J, not concurring.