WEITZEL, ADMR., *v.* WEITZEL.

(No. 711621—Decided July 22, 1968.)

Probate Court of Cuyahoga County.

*Mr. Harry C. Antel* and *Mr. Walter S. Musiel, Jr.,* for plaintiff.

*Mr. Robert O. Fricke,* guardian ad litem for Kenneth E. Weitzel, Mary Lydia Weitzel and Barbara Weitzel, minors.

*Mr. Joel M. Garver,* guardian ad litem for Kenneth Weitzel, minor.

DECATUR, Referee.  The petition of Harry G. Weitzel, administrator with the will annexed of the estate of Lydia Weitzel, deceased, concerns the construction of Item III of the Last Will and Testament of Lydia Weitzel which provides:

*Item III*: In the event my husband predeceases me or in the event of a common disaster in which both my husband and I may die, regardless of which one predeceases the other, I give devise and bequeath all my property both real and personal, to my then living children and grandchildren, share and share alike.

Lydia Weitzel executed this will on April 21, 1957. She

died June 13, 1967, survived by her two sons Harry G. Weitzel and Kenneth E. Weitzel; her husband having predeceased her.

Harry G. Weitzel has two natural children, grandchildren of the deceased.

Kenneth E. Weitzel has no natural children, however, Kenneth E. Weitzel did adopt two children, Mary Lydia Weitzel, born January 25, 1961, and Barbara Weitzel, born April 25, 1963. The adoptions presumably occurred during the life of the deceased, *after the execution of the will*, however, the exact dates have not been specified.

The issue thus raised is whether the two legally adopted children of Kenneth E. Weitzel can be included in a class gift to "children and grandchildren" made by the will of one not a party to the adoption and executed prior to the adoption.

I

"Adoption is of relatively recent origin in American law, having been introduced in the various states beginning in the middle of the nineteenth century." Halbach, *The Rights of Adopted Children Under Class Gifts*, 50 Iowa L. Rev. 971, 972 and N. 5. (1965). The common law has no history of adoption though the ancient Romans and other early civilizations did recognize and accept the concept.

Historically, American courts gave adopted children very little consideration in cases involving inheritance or rights to shares in class gifts under private instruments. A commentator has attributed this attitude to "the preexisting tendency to favor blood relatives in succession matters, including construction of wills, * * * accompanied by a common failure of adoption acts to deal adequately with the effects of adoption." Halbach, *Rights of Adopted Children Under Class Gifts, supra,* at 973.

Summarizing the legal effect of this attitude it could be said the absence of clear statutory mandate, the early decisions refused to confer any rights of a natural child upon an adopted child.

As time passed adoptions became more and more common in the United States, involved legal procedures were

devised to protect the minor who was to be adopted and to assure the state that the child would receive proper treatment, training, and care. The public began to accept adoption as a normal practice, and today, in the mind of the average man, an adopted child and a natural child are classed as equals, both are considered to be members of their parents' families.

Just as the social acceptance of adoption and the adopted child grew, the legal effect of adoption upon the adopting parents, the natural parents and the adopted child, was considered and reconsidered; statutes were passed and repealed; amended and reworded; and it cannot be said that the process has yet ended.

The only judgment possible when considering the current state of the legal rights involved is that an obvious, general trend of liberalization is apparent in all jurisdictions to the end that an adopted child will be treated as the natural child of the adopting parents and the family of those parents, and will cease, in every respect to be the child of its natural parents.

Ohio's statutory history is in complete accord with this general trend. The earliest enactment found by this writer provided that an adopted child

"shall be, to all intents and purposes, the child and legal heir of his or her adopter or adopters, entitled to all the rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock." 56 Ohio Laws 83 (1859).

Re-enacted without substantial change as Section 3140, Ohio Rev. Stat., 88 Ohio Laws 556 (1891), the provision was interpreted so as to limit the adopted child's rights of inheritance to the property possesed only by its adopting parents. *Theobald* v. *Fugman,* 64 Ohio St. 473; *Phillips* v. *McConica,* 59 Ohio St. 1. Of course, the adopted child could still inherit from its natural parents, and their ancestors.

As amended in 1910 the statute read:

"Such child shall be the child and legal heir of the person so adopting him or her and entitled to all rights and privileges and subject to all the obligations of a child of

such person begotten in lawful wedlock." Section 8030, General Code (1910).

Again amended in 1921 the statute now provided:

"[T]he child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and or to the distribution of personal estate on the death of such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents. * * *" Section 8030, General Code (1921).

In 1932 as part of a general revision of the probate portion of the code the following was added:

"but (such child) shall be capable of inheriting property *expressly limited by will* or operation of law to the child or children, heir or heirs at law, or next of kin of the adopting parent or parents *or to A Class* including any of the foregoing." Section 10512-19, General Code, 114 Ohio Laws 474 (1932). (Emphasis added.)

Except to the extent that provision was made for an adopted child to inherit through its adopting parent and in consequence thereof the complete termination of any right to inherit from its natural parents and ancestors, the statute was re-enacted as Section 10512-23, General Code, 120 Ohio Laws 440 (1943).

In 1951 the present Section 3107.13, Revised Code, was enacted as Section 8004.13, General Code, 124 Ohio Laws 193 (1951), and provides as follows:

"For all purposes under the laws of this state, *including without limitation all laws and wills* governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents." (Emphasis added.)

From even a cursory reading of the statutory history set forth above, it is apparent that the Ohio Legislature has consistently sought to modify, liberalize, and increase the inheritance rights of adopted children so as to equate them

to the changing attitudes and expectations of the public.

The 1932 amendment, though intended to assure that adopted children could take through their adopting parents, incidentally, expressly indicated that the statute's provisions were applicable to class gifts in private instruments. Therefore, a reasonable interpretation of that amendment would lead one to assume that a gift to the children of "A" included within its terms, any adopted children of "A" no matter who the donor happened to be.

The 1951 amendment to the statute eliminated any specific reference to class gifts to children; however, the statute was even more clearly applicable to private instruments. The statute avoided the prior language by which the Legislature invested an adopted child with *rights* of a natural child, and in its place granted the adopted child the same legal status as a natural child.

Considering the history of this statute and the clear policy presented thereby, it cannot be assumed that the Legislature intended to limit the rights of adopted children by its most recent amendment; to the contrary, it must be concluded that the Legislature intended to further expand the inheritance rights of an adopted child, to treat that child as a natural child of the adopting parents.

Though the current statute, Section 3101.13, Revised Code, can be interpreted to apply to class gifts in private instruments, see Halbach, *The Rights of Adopted Children Under Class Gifts,* 50 Iowa L. Rev. 971, 975, nn. 22, 96, 99 (1965), so as to include adopted children thereunder; the Ohio courts, pursuing their historical reluctance to vary or affect property rights even in the face of strong social attitudes directly in opposition to their decisions have refused to fully accept this construction insisting that the question of whether adopted children take as members of a class under a private instrument must be determined by reference to that instrument and the intent of the testator, noting that the adoption statutes are helpful only in the sense that they are an expression of social attitude and legislative policy. See 2 American Jurisprudence 2d Adoption, Sections 92, 95.

The general rule of construction relating to class gifts, in the instant situation provides that a testator is presumed to have intended to include in a testamentary gift to a class, a child adopted by him in the absence of any indication to the contrary in the instrument. The presumption is reversed, however, when the testator is a so-called "stranger-to-the-adoption," in that case it is presumed that an adopted child is not included within a class gift unless a contrary intention clearly appears. Annot., 86 A. L. R. 2d 12 at 32; *Rodgers, Jr.*, v. *Miller* (1932), 43 Ohio App. 198, 207.

It is with this "stranger-to-the-adoption" doctrine that we are concerned, in the present case.

The doctrine has been severely criticized by many commentators. See *e. g.*, Halbach, *The Rights of Adopted Children Under Class Gifts*, 50 Iowa L. Rev. 971, 978-82, 996-97 (1965); Oler, *Construction of Private Instruments Where Adopted Children Are Concerned*, 43 Mich. L. Rev. 901, 935-38 (1945); Note, *Adopted Children; Inheritance Through Intestate: Succession, Wills, and Similar Instruments*, 42 B. U. L. Rev. 210, 224-26 (1962), repudiated completely by the highest courts of several states, *Estate of Heard* (1957), 49 Col. 2d 514, 319 P. 2d 637; *Willson* v. *Johnson* (Ky. 1965), 389 S. W. 2d 634; *Edmonds* v. *Tice* (Ky. 1959), 324 S. W. 2d 491; overruled in part, *Willson* v. *Johnson* (Ky. 1965), 389 S. W. 2d 634; *In re Trust Created by Will of Patrick* (1960), 259 Minn. 193, 106 N. W. 2d 888; *Estate of Coe* (1964), 42 N. J. 485, 201 A. 2d 571; *Re Trusts of Adler* (1960), 30 Wis. 2d , 140 140 N. W. 2d 219, eliminated by express statutory revision in others, Conn. Gen. Stat. Ann. Section 45-65a (1960); Ga. Code Ann. Section 74-414 (1964); Ind. Ann. Stat. s6-708 (Supp. 1951); Ill. Rev. Stat. ch 3, Section 14 (1961); Md. Ann. Code, Article 16, Section 78(c) (Supp. 1964); N. J. Stat. Ann. tit. 9:3-30 (1960); N. Y. Deced. Est. Law Section 49; Pa. Stat. Ann. tit. 20, ch. 2, Section 228 (1957); Tex. Prob. Code Ann. Section 40 (1956), and the reasons for its creation shown to be fallacious by social scientists. See *Merrill & Merrill, Toward Uniformity in Adoption Law*, 40 Iowa L. Rev. 299, 318-19 (1955); *Ken-*

*nedy, The Legal Effects of Adoption,* 33 Can. B. Rev. 751, 874-75 (1955); *Kornitzer, Child Adoption in the Modern World,* 150 (1952).

It has been assumed by one Ohio commentator that Section 3107.13, Revised Code, does in fact override the stranger to the adoption rule, Note, 23 Ohio State L. J. 586, 590 (1962), however, this assumption is not actually justified by a careful reading of the decided cases. In fact, notwithstanding the severe criticism of the "stranger-to-the-adoption" rule noted above, the courts of this state have followed and applied it.

It is this writer's opinion that the doctrine is erroneous, and unjustified and should be voided by judicial decree or express legislative provision.

It is also important to this inquiry to note that express revision has not been the sole method of circumventing the "stranger-to-the-adoption" doctrine. Since those courts following the general rule state repeatedly that the governing consideration is the intent of the testator, various factors have been considered in determining that intent, *i. e.,* the words and/or phrases used, words modifying class designations, and the circumstances surrounding the execution of the will. Great weight is also placed upon the time of adoption in determining testamentary intent. Annot. 86 A. L. R. 2d 12, Sections 2, 7.

It should also be noted that many findings of specific intent to include adopted children within class gifts are based upon strained interpretations of the facts and circumstances, see *e. g., Holter v. First Nat'l Bank & Trust Co.* (1959), 135 Mont. 27, 336 P. 2d 701, an obvious reaction to a rule which offends one's sense of fairness and justice.

As stated in *Estate of Coe*:

"We cannot believe it probable that strangers to the adoption would differentiate between the natural child and the adopted child of another. Rather we believe it more likely that they accept the relationships established by the parent whether the bond be natural or by adoption and seek to advance those relationships precisely as that parent would. None of us discriminates among children of a

relative or friend upon a biological basis. We ought not impute to others instinct contrary to our own. *Estate of Coe* (1964), 42 N. J. 485, 201 A. 2d 571, 575.

The above quotation is probably the best argument against this inequitable rule that this writer has found. Avoidance of the ''stranger-to-the-adoption'' doctrine is based upon humane and compassionate considerations which are appropriate to the attitudes of a modern civilized society. * * *'' *In re Patricks' Will* (1960), 259 Minn. 193, 106 N. W. 2d 888, 890. The court further stated:

''We have come to realize that it is not the biological act of begetting offspring—which is done even by animals without family ties—but the emotional and spiritual existence of living together that creates a family. The family relationship is created far more by love, understanding, and mutual recognition of reciprocal duties and bonds, than by physical genes.'' *Ibid.*

It is not therefore unreasonable to assume that the courts before which issues such as this are tried attempt to avoid the operation of the rule, either by finding a contrary intent or by voiding the rule entirely.

Ohio courts have infrequently touched upon the doctrine. The earliest specific reference to it is in the case of *Rodgers, Jr.,* v. *Miller* (1932), 43 Ohio App. 198, wherein the court dealt with the construction to be placed upon a deed of trust executed in 1914 conveying a life interest to the testator's children, the share of income a deceased child would receive to be divided between that child's wife and his children surviving the testator. The child died leaving no natural children; however, eight years after the execution of the trust deed the testator's child had adopted a minor child. The issue thus presented was whether the adopted child took under the trust deed. The court notes that it is dealing with a direct gift to these children and that they would not be taking through their parent. The court relies heavily upon *Albright* v. *Albright* (1927), 116 Ohio St. 668, which held that a child adopted fifteen years after the death of its adoptive parent's father cannot be included in a gift to the children of testator's

son upon the death of that son.  The decision in *Rodgers* v. *Miller*, determined that the testator did not intend to include after adopted children.  To the same effect is *Central Trust Co.* v. *Hart* (1948), 82 Ohio App. 450, which also deals with after adopted children.

In 1952 the Ohio Supreme Court decided *Third National Bank and Trust Co.* v. *Davidson*, 157 Ohio St. 355, which also dealt with the rights of after-adopted children. As in *Rodgers* v. *Miller*, the court noted that a direct gift to grandchildren was involved and no issue of taking through the child's adoptive parent was present.  The decision therein was, it seems to this writer, based upon the specific language found in the instrument referring to children "born prior or subsequent to my death," and in this respect, the decision is distinguishable from the prior cases.  Further, the court cited *Fidelity Union Trust Co.* v. *Hall*, 6 A. 2d 124 (ch N. J.), for the proposition that adopted children were not intended to take under a gift to grandchildren made by a stranger-to-the-adoption.  It should be noted that New Jersey, among other jurisdictions, has abolished the stranger-to-the-adoption doctrine, both by statute and decision.  See *Estate of Coe, supra.*

*National City Bank* v. *Judkins* (C. P. 1964), 8 Ohio Misc. 119, summarizes existing Ohio law on the issue by stating that Ohio follows the stranger-to-the-adoption doctrine if the adoption occurs after the death of the testator.

All the above cases, however, do indicate an exception to the rule where the testator either anticipated the adoption, where the testator knew that it had already taken place, or where the surrounding circumstances are such as would lead a court to determine that the testator intended the adopted children to take.  See *e. g., Third National Bank and Trust Co.* v. *Davidson* (1952), 157 Ohio St. 355, 365; *Rodgers* v. *Miller* (1932), 43 Ohio App. 198, 207-08.

No case has been found in Ohio which has considered a situation quite like that presented in the instant case, wherein the adoptions occurred subsequent to the execu-

tion of the will but a significant period prior to the death of the testator. This is not, however, a novel question, for many other jurisdictions have been presented with the same issue.

In *Mooney* v. *Talles* (1930), 111 Conn. 1, 149 A.H. 515, 519, the court stated that the presumption that adopted children are not to take from a stranger is used only in cases where adoption occurs long after the death of the testator; adoption prior to death or execution of the will, coupled with knowledge on testator's part of the adoption and approval thereof, are persuasive of the testator's intent to include adopted children. See also *Bray* v. *Miller* (1899), 23 Ind. App. 432, 54 N. E. 446, overruled in part, *Casper* v. *Helvie* (1925), 83 Ind. App. 166, 146 N. E. 123; *Re Klines' Will*, 48 Misc. 2d 410, 265 N. Y. S. 2d 188.

There are also several jurisdictions which refuse to accept an argument that knowledge of the adoption and approval thereof is sufficient to change the testamentary intent of the testator so as to include adopted children. See *Dulfon* v. *Keasbey* (1932), 111 N. J. Eg 223, 162 A.H. 102; *In re Hopkins* (1905), 102 App. Div. 458, 92 N. Y. S. 463. However, it is apparent that the attitude of the courts and Legislatures have been significantly liberalized when considering the rights of an adopted child under the will of a stranger to the adoption. Especially since those jurisdictions noted above as having strictly applied the rule have modified or rejected that same rule in the past few years. See *Estate of Coe* (1964), 42 N. J. 485, 201 A. 2d 571 and N. Y. Deced. Est. Law, Section 48 (adopted in 1964).

This writer is impressed and persuaded by the excellent series of recent opinions rendered by the North Carolina Supreme Court which clearly accept the argument noted above. See *Smyth* v. *McKissick* (1943), 222 N. C. 644, 24 S. E. 2d 621; *Bradford* v. *Johnson* (1953), 237 N. C. 572, 75 S. E. 2d 632; and the most recent and most explanatory decision, *Bullock* v. *Bullock* (1960), 251 N. C. 559, 111 S. E. 2d 837.

In the *Bullock decision* the court implies that a gift

to grandchildren will include children adopted after execution of the will and before the testator's death if it is shown that the testator knew and approved of the adoptions and had the ability (physical and mental) to change his will to eliminate them. It is this writers opinion that this case should be accepted as the rule in Ohio.

### CONCLUSION

1. The stranger-to-the-adoption presumption is unfair, inequitable, and has no relationship to the actual attitude and experience of the general public, the courts and students of adoption, and therefore should be avoided either by judicial action or by legislative fiat.

2. In the alternative the stranger-to-the-adoption rule should be restricted to adoptions occurring after the death of the testator and of which that testator had no knowledge or reason to believe that they would occur.

3. The construction used by the North Carolina Courts should be adopted as the rule in Ohio if the stranger to the adoption rule is not voided entirely: The adopted child will be included in a class gift to strangers if

(1) the testator knew of the adoption

(2) the testator approved of the adoption

(3) the adoption occurred prior to the death of the testator and after the execution of the will or instrument.

(4) the testator had the physical and mental ability to change the will to eliminate the adopted children.

And alternately to all the above, any other circumstances which are present tending to show that the testator intended to include adopted children within the class.

It being apparent from the facts as hereinbefore stated that the testatrix had the ability (both physical and mental) to change her will to eliminate the children adopted after the execution of her will, and not having done so, and having had knowledge of the adoption, the gift should include the children adopted after the execution of the will.