Tafel Estate.

Argued January 18, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

*Edward L. Snitzer*, with him *Leon I. Mesirov*, and *Mesirov, Gelman, Jaffe & Levin*, for appellants.

*H. Ober Hess* and *James Francis Lawler*, with them *Frederic W. Clark, Bruce L. Castor, Ballard, Spahr, Andrews & Ingersoll*, and *Ostroff & Lawler*, for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, November 17, 1972:

On July 7, 1935, Adolph Tafel (testator) died. On February 2, 1935, he had executed his will in which he created a trust. Under that trust, testator's widow was to receive the income during her life and, upon her death, the corpus of the trust was to be divided in four equal shares for the benefit of his four named children, each child to receive the income from one such share during his or her life and, upon each child's death, the corpus of the share of such child so dying to "go to such of his or her children as may then be living,

and to the issue then living of such of them as may be dead." Absent children or issue of children, gifts over were provided.

Testator's widow died March 23, 1945, and Adolph Tafel, testator's only son, died January 17, 1970, survived by two adopted children, Pamela Tafel (now Pamela Gabell) and Anthony Tafel (appellants). These children—minors when adopted—were both adopted after the testator's death. Pamela having been adopted six years and Anthony having been adopted nine years after testator's death.

The sole issue presented on these two appeals is whether appellants, as adopted children, are entitled to take under testator's testamentary trust as "children" of testator's deceased son, Adolph Tafel. The Orphans' Court Division of the Court of Common Pleas of Philadelphia held that appellants did not take as "children" and awarded the share of the corpus (the income from which had been paid to Adolph Tafel during his lifetime) to testator's trustee to be added to the shares of testator's three surviving daughters. From that decree the instant appeals were taken. The court below reached its conclusion in reliance upon Section 16(b) of the Wills Act of 1917[1] and *Holton Estate,* 399 Pa. 241, 159 A. 2d 883 (1960). The appellants now urge that we reconsider our prior case law, including *Holton,* and our prior interpretation of Section 16(b) which excluded adopted children from taking if the adoptions took place after execution of the will.[2]

---

[1] Act of June 7, 1917, P. L. 403, §16(b), 20 P.S. Chap. 2, App. §228.

[2] The Wills Act of 1947, P. L. 89, 20 P.S. §180.14, prior to the Act of February 17, 1956, P. L. (1955) 1070, 20 P.S. §180.14, provided: "(6) Adopted children. In construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any person adopted before the death of the testator shall be consideerd the child of his adopting parent

Appellants correctly contend that, under our prior case law, in the absence of *any* testamentary language demonstrating the intent of the testator, our courts have *presumed* that the testator, in a will making a gift or bequest to a person or persons other than the testator's "child" or "children", intended to *exclude* adopted children. Appellants urge that we reevaluate our case law, change our rule and hold that, in the absence of *any* testamentary language demonstrating the intent of the testator, it should be *presumed* that the testator intended to include adopted children. The legislative guide line of construction enunciated in Section 16 (b) of the 1917 Wills Act, *supra,* is applicable "unless a contrary intention appears" in the will. Section 16 (b) refers solely to adoptions by a person or persons other than the testator, *i.e.,* known as the "stranger-to-the-adoption" situation. Obviously, the legislative purpose was to thwart adoptions undertaken by a person or persons other than the testator for the purpose of preventing a gift over in default of children. We repeat,

---

or parents and not the child of his natural parents: Provided, That if a natural parent shall have married the adopting parent before the testator's death, the adopted person shall also be considered the child of such natural parent." Section 1 of the 1956 amendment provides: "(6) Adopted children. In construing clauses (8), (9) and (10) of this section, relating to lapsed and void devises and legacies, and in construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any person adopted before the death of the testator shall be considered the child of his adopting parent or parents and not the child of his antural parents: Provided, That if a natural parent shall have married the adopting parent before the testator's death, the adopted person shall also be considerer the child of such natural parent." *See, also,* Act of July 24, 1970, P. L. 620, §502, 1 P.S. §502 (Supp. 1971.)

It will be noted that the 1947 Act, *supra, inter alia,* changes the language of the 1917 Act, *supra,* to permit a child or children, of other than the testator, adopted before the testator's death to be included. *See,* Commission's Comment, 20 P.S. §180.14, p. 329.

in passing upon the statutory language, our courts adopted a rule of construction (engrafted on the statutory language) that, in the absence of *any* demonstration of the actual intent of the testator, a *presumption* arises that the testator intended to *include* in the words "child" or "children" only natural children and to *exclude* adopted children.

To a re-examination of the soundness and validity of our case and statutory law, in the light of the legislative equation in the adoption statutes of the rights of adopted and natural children, we address ourselves. In such re-examination, initially, we give recognition to the so-called "stranger" status of appellants. Appellants are "strangers" to the blood (*i.e.,* there are no biological ties) of either the testator or his son and are also "strangers" to any adoption by the testator (*i.e.,* they were adopted by a person other than the testator). Moreover, it is obvious that appellants' adoptions were not known to testator and the record does not reveal whether Adolph Tafel, the son, could have had natural children or, if not, whether the testator was aware of such fact, nor is there any evidence whether any of testator's other children had adopted a child or children of which fact testator was aware. *Cf., Chambers Estate,* 438 Pa. 22, 263 A. 2d 746 (1970). Also, we bear in mind that we are construing and interpreting the language of a statute[3] and, if the statute is contrary to the common law, the statute is subject to strict construction. The common law did not recognize adoption; prior to 1855 we had no general statute in Pennsylvania providing for an adoption procedure. *See, Thompson's Adoption,* 290 Pa. 586, 590, 139 Atl. 737, 739 (1927).[4]

[3] Section 16(b) of the Wills Act of 1917, *supra,* alone is applicable.

[4] Up to 1855 adoptions were not made legally except by special acts of assembly. *See, Thompson's Adoption,* 290 Pa. at 590-91, 139 Atl. at 739.

At the outset, we inquire what the legislative body, in the statutes providing for adoptions, has provided as to the rights of adopted children vis-a-vis natural children. Beginning with the first adoption statute of 1855, on *eight* occasions[5] whenever the legislature has spoken on the effect of an adoption once decreed, the legislature has expressly, specifically and unequivocally mandated that the adopted person "shall have *all* the rights of a child and heir of" the adoptive parents. As we said in *Collins Estate*, 393 Pa. 195, 201, 142 A. 2d 178, 182 (1958): "This Act of 1855 has a four-fold significance: its declaration that an adopted child was the 'heir' of its adopting parents, its recognition of the existence of reciprocal rights of inheritance between an adopted child and its adoptive brothers and sisters, its omission to grant reciprocal rights of inheritance to the adopting parents and its recognition that estates of intestates might descend to and be distributed among persons not of the blood of the intestate. [Footnote omitted.]" Despite the language of the adoption statutes, our courts have given but "lip service" to the legislative mandate in the construction of wills and trusts.[6]

---

[5] Act of May 4, 1855, P. L. 430, §7; Act of May 19, 1887, P. L. 125; Act of May 9, 1889, P. L. 168; Act of June 1, 1911, P. L. 539; Act of April 4, 1925, P. L. 127, §1; Act of June 30, 1947, P. L. 1180, §1; Act of August 26, 1953, P. L. 1411, §1; Act of July 24, 1970, P. L. 620, 1 P.S. §502 *et seq.* We refer only to *adoption* statutes, not the several Wills, Intestacy and Estates Acts. Moreover, the Acts of 1855, 1887, 1889 and 1911 contained provisions as to inheritance between adopted and natural children of the same adopting parent "as if all had been the lawful children of the same parent."

[6] *Bell Estate*, 439 Pa. 433, 267 A. 2d 862 (1970); *Fownes Trust*, 421 Pa. 476, 220 A. 2d 8 (1966); *Holton Estate*, 399 Pa. 241, 159 A. 2d 883 (1960); *Trattner Estate*, 394 Pa. 133, 145 A. 2d 678 (1958); *Corr's Estate*, 338 Pa. 337, 340, 12 A. 2d 76 (1940): *Reamer's Estate*, 315 Pa. 148, 172 Atl. 655 (1934); *Yates's Estate*, 281 Pa. 178, 126 Atl. 254 (1924); *Boyd's Estate*, 270 Pa. 504, 113 Atl. 691

In only two areas have our courts followed the legislative mandate. In *Cave's Estate,* 326 Pa. 358, 192 Atl. 460 (1937), we held that, in cases of *actual intestacy,* an adopted child can inherit not only from his adoptive parents but also from the collateral relatives of the adoptive parents. Our later case law has not altered this ruling so that, as the law now stands, in *actual intestacy* an adopted child is given all the rights of inheritance of a natural child. in *Collins Estate, supra,* we construed a gift to "descendants" of a life tenant in the 1912 will of a decedent who died in 1921 to include children who were adopted by the life tenant many years after the decedent's death. The ruling in *Collins* was restricted to an inclusion of adopted children in the word "descendants". In all other instances involving testamentary gifts to a "child" or "children" of a person other than the testator-settlor, we have held that adopted children, adopted after the will was executed (under the Wills Act of 1917, *supra*) or after the death of the testator (under the Wills Act of 1947), were not entitled to take as "children". The rationale of this case law was based solely upon a reliance on the "cut-off date" of the adoptions set forth in both Wills and Estates Acts and by indulging in a presumption employed in the interpretation of the phrase "unless a contrary intention appears" that the testator intended to exclude adopted children. *Cf., Chambers Estate,* 438 Pa. 22, 263 A. 2d 746 (1970). In *Holton Estate,* supra,[7] we said. by way of dictum: "An examination of this statute clearly reveals the legislative intent to *include* within the term 'child' or 'children' of a person other than the testator an adopted 'child' or 'children' pro-

---

(1921); *Puterbaugh's Estate,* 261 Pa. 235, 104 Atl. 601 (1918); *Goldstein v. Hammell,* 236 Pa. 305, 84 Atl. 772 (1912); *Burnett's Estate,* 219 Pa. 599, 69 Atl. 74 (1908); *Schafer v. Eneu,* 54 Pa. 304, 306 (1867).

[7] The writer of this opinion wrote *Holton.*

vided, however, that such adoption took place before the execution of the will, and to exclude such adopted child or children if the adoption took place after the execution of the will." 399 Pa. at 247, 159 A. 2d at 886.

A fresh reading of the adoption statutes and their unequivocal legislative direction that adopted children be treated with equality with natural children compels us to revise our prior thinking, to disavow the dictum in *Holton* and, in the construction of the statutory clause "unless a contrary intention appears", to adopt a presumption that the testator intended to *include* any "child" or "children" who were adopted.

The view we now adopt may not be that of the majority of jurisdictions in this country.[8] However, this view has been adopted in many jurisdictions.[9]

---

[8] *Connecticut Bank and Trust Company v. Hills*, 157 Conn. 375, 254 A. 2d 453 (1969) ; *Orme v. Northern Trust Company*, 25 Ill. 2d 151, 183 N.E. 2d 505 (1962) ; *Baker v. Giffrow*, 257 Iowa 929, 135 N.W. 2d 629 (1965) ; *Poertner v. Burkdoll*, 201 Kan. 41, 439 P. 2d 393 (1968) ; *Minary v. Citizens Fidelity Bank & Trust Company*, 419 S.W. 2d 340 (Ky. 1967) ; *Fiduciary Trust Co. v. Silsbee*, 159 Me. 6, 187 A. 2d 396 (1963) ; *In re Graham Estate*, 379 Mich. 224, 150 N.W. 2d 816 (1967) ; *Amoskeag Trust Company v. Preston*, 107 N.H. 330, 222 A. 2d 158 (1966) ; *Wachovia Bank and Trust Company v. Andrews*, 264 N.C. 531, 142 S.E. 2d 182 (1965) ; *National City Bank of Cleveland v. Mitchell*, 13 Ohio App. 2d 141, 234 N.E. 2d 916 (Court of Appeals of Cuyahoga County, 1968) ; *Weitzel v. Weitzel*, 16 Ohio Misc. 105, 239 N.E. 2d 263 (Probate Court of Cuyahoga County, 1968) ; *Mealy v. First National Bank and Trust Company of Tulsa*, 445 P. 2d 795 (Okla. 1968) ; *Rhode Island Hospital Trust Company v. Hooker*, 101 R.I. 12, 219 A. 2d 772 (1966), 101 R.I. 769, 222 A. 2d 779 (1966) ; *Decker v. Elliott*, 425 S.W. 2d 880 (Tex. Court of Civil Appeals, 1968) ; *Security National Bank & Trust Co. v. Willim*, 151 W.Va. 429, 153 S.E. 2d 114 (1967).

[9] *Johns v. Cobb*, 402 F. 2d 636 (C.A. D.C. 1968), *cert. denied*, 393 U.S. 1087 (1969) ; *Riggs Nat. Bank v. Summerlin*, 300 F. Supp. 1000 (D.C. 1969) ; *In re Heard's Estate*, 49 C. 2d 514, 319 P. 2d 637 (1957) ; *In re Stanford's Estate*, 49 C. 2d 120, 315 P. 2d 681 (1957) ; *Wilson v. Johnson*, 389 S.W. 2d 634 (Ky. 1965) ; *Breckinridge v. Skillman's Trustee*, 330 S.W. 2d 726 (Ky. 1959) ; *Edmonds*

In *In re Coe,* 42 N.J. 485, 489-90, 492, 201 A. 2d 571, 574, 575 (1964), Mr. Chief Justice WEINTRAUB, speaking for the New Jersey Supreme Court, well said:

"At any rate, it is not important whether the adoption statute directly controls the interpretation of instruments. The important point is that the statute reflects the feeling and attitude of the average man and hence its policy should be followed unless the benefactor explicitly reveals a contrary purpose. . . . True there was no legally recognized right to adopt at common law and hence the right as such depends upon statute as the authorities just cited point out, but our statute did not generate that familial or social phenomenon. Rather our statute belatedly recognized relationships which men have always assumed, and translated into a rule of law what the Legislature found to be their common expectation and wish.

. . .

"We cannot believe it probable that strangers to the adoption would differentiate between the natural child and the adopted child of another. Rather we believe it more likely that they accept the relationships established by the parent whether the bond be natural or by adoption and seek to advance those relationships precisely as that parent would. None of us discriminates among children of a relative or friend upon a biological basis. See In re Patrick's Will, 259 Minn. 193, 106 N.W. 2d 888, 890 (Sup. Ct. 1960).; In re Trus-

v. *Tice,* 324 S.W. 2d 491 (Ky. 1958) ; *Holden's Trust,* 207 Minn. 211, 291 N.W. 104 (1940) ; *In re Patrick's Will,* 259 Minn. 193, 106 N.W. 2d 888 (1960) ; *Chase Manhattan Bank v. Mitchell,* 53 N.J. 415, 251 A. 2d 128 (1969) ; *In re Thompson,* 53 N.J. 276, 250 A. 2d 393 (1969) ; *In re Coe,* 42 N.J. 485, 201 A. 2d 571 (1964) ; *In re Park's Estate,* 15 N.Y. 2d 413, 260 N.Y.S. 2d 169 (1965) ; *In re Upjohn's Will,* 304 N.Y. 366, 107 N.E. 2d 492 (1952) ; *Weitzel v. Weitzel,* 16 Ohio Misc. 105, 239 N.E. 2d 263 (Probate Court of Cuyahoga County, 1968) ; *Dollar Savings & Trust Co. v. Musto,* 88 Ohio L. Abst. 62, 181 N.E. 2d 734 (1961).

teeship Agreement with Nash, 265 Minn. 412, 122 N.W. 2d 104, 109 (Sup. Ct. 1963). We ought not impute to others instincts contrary to our own. . . ."

In *Fownes Trust*, 421 Pa. 476, 482-83, 483-84, 220 A. 2d 8, 11, 12 (1966), Mr. Justice ROBERTS, in a dissenting opinion joined by Mr. Justice MUSMANNO and the writer of this opinion, said:

"Whether an adoptee is comprehended by a given designation in a will or deed of trust turns on the 'intention' of the testator or settlor. Absent an express direction in the instrument, however, a real intention is seldom discoverable. Yet, the majority, relying on such cryptic and unrevealing terms as 'issue' and 'children', purports to find such an intention and a direction on the part of the settlor to exclude appellant-adoptee from sharing in the instant trust estate. I disagree. In my view, there is no sound basis for concluding that the settlor, by employing those terms, intended to exclude adopted children from sharing in his bounty. It is far more likely, and more reasonable to assume, that the absence of an express direction with respect to the matter indicates that the settlor failed to advert to the possibility of adopted children, their inclusion or exclusion, and, accordingly, expressed no explicit direction one way or the other. Had he adverted to the question, and determined not to include adopted children as beneficiaries of the trust estate, it is reasonable to assume that he would not have restricted himself to the cryptic designations upon which the majority relies, but would have employed language which would have left no doubt as to his intent.

"Thus, in truth, we have no *real* expression of the settlor's 'intention' regarding the effect of adoption on the distribution of the trust income and corpus and are confronted with the delicate task of filling 'a casus omissi'. Traditionally, the result of this process has largely represented 'a union of judicially envisaged

social desirability with conjecture as to what the conveyor probably would have intended had he thought about the matter.' In the instant case, I am of the view that the relevant considerations dictate the conclusion that appellant was 'intended' to be included and to benefit to the same extent as the settlor's other great grandchildren. [Footnotes omitted.]

. . .

"My conviction that the majority has erred is strengthened by the fact that given two equally plausible views, I see no justification for discarding one which fosters the sound public policy of this Commonwealth to accord equality of treatment to adopted children in favor of one which perpetuates distinctions which no longer exist in the eyes of adoptive parents or enlightened modern people everywhere. Thus, the sound approach, as I view the matter, would be to adopt a rule of construction which, *in the absence of a clear expression in the instrument of the settlor's intention to the contrary,* would deem adoptees as embraced within such general designations as 'issue' or 'children'. Such an approach, while not limiting the right of settlors to freely dispose of their property as they see fit and to favor blood lines over adoptive relationships if they so elect, would resolve those cases in which no *explicit* intent is expressed in the most socially desirable manner."

The rule of construction we today recognize equates the rights of natural children and adopted children and executes the legislatively mandated equality so clearly and unequivocally expressed in the statutes of adoption, *i.e.,* that the adopted person "shall have all the rights of a child and heir of" the adopting parents. This rule does not preclude nor prevent any testator who desires to distinguish between natural and adopted children as recipients of his bounty from doing so; an expression of such intent in his will accomplishes that result.

In enunciating this rule we are not unmindful of the provisions of recently enacted legislation, known as the "Probate, Estates and Fiduciaries Code" (Act of June 30, 1972, No. 164, 20 P.S. §§2108, 2507(4), 2514 (7), 6114(4), eff. July 1, 1972).[10]

This rule does not conflict with any such legislation but simply *presumes* that a testator, in the absence of any *expressed* intention in the will to the contrary, intended to treat adopted children in the same manner

[10] §2108 provides: "Adopted person. For purposes of descent by, from and through an adopted person he shall be considered the issue of his adopting parent or parents and not the issue of his natural parents: Provided, That if a natural parent shall have married the adopting parent, the adopted person for purposes of descent by, from and through him shall also be considered the issue of such natural parent."

§2507(4) provides: "Birth or adoption. If the testator fails to provide in his will for his child born or adopted after making his will, unless it appears from the will that the failure was intentional, such child shall receive out of the testator's property not passing to a surviving spouse, such share as he would have received if the testator had died unmarried and intestate owning only that portion of his estate not passing to a surviving spouse."

§2514(7) provides: "Adopted children. In construing clauses (9), (10) and (11) of this section, relating to lapsed and void devises and legacies, and in construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any person adopted before the death of the testator shall be considered the child of his adopting parent or parents and not the child of his natural parents: Provided, That if a natural parent shall have married the adopting parent before the testator's death, the adopted person shall also be considered the child of such natural parent."

§6114(4) provides: "Adopted children. In construing a conveyance to a person or persons described by relationship to the conveyor or to another, any person adopted before the effective date of the conveyance shall be considered the child of his adopting parent or parents and not the child of his natural parents: Provided, That if a natural parent shall have married the adopting parent before the effective date of the conveyance, the adopted person shall also be considered the child of such natural parent."

as natural children and to *include* in the testamentary words "child" or "children" an adopted child regardless of the date of his or her adoption. To the extent that *Fownes Trust,* supra, is in conflict with the views expressed in this opinion, *Fownes Trust* is overruled.

The rule of construction herein announced applies where the adoptee or adoptees at the time of adoption were minors and not adults and does not apply where an adoptee or adoptees was or were adults at the time of adoption. By the restriction of this rule of construction to minor adoptions we serve and effectuate the purpose of preventing an adult adoptee or adoptees from being considered a testamentary "child" or "children" where such adoption is undertaken by a person other than the testator to prevent a gift over in default of a natural "child" or "children" and thus, in effect, rewrite the testator's will. *Cf. Holloway Estate,* 444 Pa. 624, 281 A. 2d 631 (1971).

From the opinion of the lower court and appellee's brief, it appears that an advancement had been made by the testator to his son, Adolph J. Tafel, in the sum of $5,000 in certain securities. In light of the views expressed in this opinion the effect of this advancement upon the shares to which appellants are entitled is a matter which should be determined in the court below and to that end we remand such determination to the court below.

Decree reversed and the matter remanded to the court below for the purpose hereinbefore stated. Each party to pay own costs.

Mr. Justice MANDERINO concurs in the result.

Mr. Justice EAGEN and Mr. Justice O'BRIEN dissent.

Mr. Justice POMEROY took no part in the consideration of this case.